# O'CONNOR v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, October 17, 1906.

1. **CONSTITUTIONAL STATUTE: Attorney's Lien Act: Title.** The provisions of the Attorney's Lien act (Laws 1901, p. 46) providing for an attorney's lien upon his client's cause of action or counterclaim, and stating the nature and character of the contract which the attorney is authorized to enter into with the client and made the basis of the lien, and providing for notice and other incidents for making the lien effective, and providing that a defendant who ignores such notice and lien and settles with the client without the attorney's consent, shall be liable to the attorney for his interest in the litigation, according to the contract, are clearly in harmony with the subject as expressed in the title, which is: "An act to prevent frauds between attorneys, clients and defendants; making agreements between attorney and client a lien upon the cause of action."

O'Connor v. Transit Co.

2. ———: ———: ———: **Clearly Expressed.** An act should not be declared unconstitutional on the ground that the title does not sufficiently clearly express the subject-matter of the act, unless the title is so expressed as to clearly violate the command of the Constitution.

3. ———: ———: **Special Law.** Said act is not class legislation simply because it gives a lien to attorneys-at-law only. It applies to a class of persons engaged in a particular profession; it does not undertake to select any particular person in that class.

4. ———: ———: **Due Process of Law.** Neither does said act deprive a defendant or any one else of his rights without due process of law, and it is not in that respect in conflict with the Federal Constitution.

5. ———: ———: **Restrictive of Right to Contract.** Said act does not deprive a defendant of any of his rights to contract. It does not deprive him of the right to make a settlement of a suit, but it requires him in making such settlement to take into consideration the fact that the attorney has a lien upon the cause of action, and if he ignores the lien he is liable in an action at law for the amount of the lien.

6. **ATTORNEY'S FEES: Lien Statute: Suit in What Court.** The statute expressly provides for a separate cause of action by the attorney to recover the amount of his lien in a suit which has been settled by defendant with his client, without his consent, after notice of his contract of employment. The action is not one strictly for the enforcement of the lien, but one for the recovery of the amount of the lien by reason of the failure of the defendant, in settling with the client, to recognize the lien. The action, therefore, can be brought, as a separate one, and in a separate court from that in which the original suit was instituted.

7. **PRACTICE: Finding of Fact: No Exception.** Where the bill of exceptions, or abstract of record in lieu thereof, discloses no objections or exceptions to the failure of the court to make a finding of facts, the trial court will not be convicted of error for failure to make such a finding.

8. ———: ———: **No Dispute About Facts.** Where appellant admits in his brief that there was no dispute about the facts and that the proof established the allegations of the petition, there is no necessity for a finding of facts, and there remained nothing for the trial court to do except to declare the law governing the cause.

Appeal from St. Louis City Circuit Court.— *Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*George W. Easley* with *Boyle & Priest* for appellant.

(1) There is not a single word in the title that would direct the mind to the question of making such a contract lawful. Nor is there anything in the title of the act indicating that notice in writing will create a lien, and above all there can be nothing evoked from the title to this act to show that it was the purpose of the Legislature to create a liability for making a settlement without the written consent of the attorney. The title of this bill gives no indication that contracts of the character named were to be legalized, that notice in writing was to create a lien, or that a settlement made by the defendant was to create a liability therefor. No suggestion of either of these points can be found in the title to the act. If the constitutional provision is not a dead letter, all if its purposes are defeated by allowing this act to stand under this title. Cooley's Const. Lim., 141; St. Louis v. Tiefel, 42 Mo. 590; Dorsey's Appeal, 72 Pa. St. 192; In re Green, 14 Colo. 401; Brooks v. People, 14 Colo. 413. (2) In considering this question the court must bear in mind that the first section of the act of February 25, 1901, has no bearing upon the question. It depends wholly upon the construction of the second section of the act. In construing the second section it is important to determine at what time the lien attaches under that section, to what does it attach, and against whom may the lien be enforced. The language of the act which attempts to create the lien answers with a definiteness each of these questions. From the reading of the first section of the act it is evident that a passive or inchoate lien of the attorney arises from the commencement of the suit, and that it attaches and becomes a lien when the claim

or demand has been reduced "to a verdict, report decision, or judgment in his client's favor." The inchoate lien embraces the client's cause of action or counterclaim, and attaches, that is, becomes an active lien upon the claim when prosecuted to a verdict, report, decision, or judgment in his client's favor. That section also with equal definiteness answers the other query as against whom the lien attaches, and against whom it may be enforced. The answer is that it exists and may be enforced against any one "in whosesoever hands they may come." The lien is merely passive until called into active existence by being reduced to a sum certain by any of the aforesaid modes specified in the Attorney's Lien act. Until there has been a verdict, report, decision, or judgment in favor of the attorney's client, there is nothing tangible to which the lien can attach. Until then there is no judicial determination that there is a cause of action. After being affixed as designated by the statute, there is something tangible to which the lien can then attach. A cause of action has been found to exist. To a mere cause of action it can never attach as a lien capable of being enforced by the courts, until that cause of action has been judicially determined. The second section of the act has a two-fold purpose. It was intended to, and it does so far as the Legislature can do so, legalize contracts, which, in the absence of this statute and at common law, would be champertous. Second, it then provides for the existence of a passive or inchoate lien upon the cause of action from the time of giving notice of the suit to the defendant. The true construction of the first section of the act is that the lien when final judgment is entered relates back to the commencement of the action, and as the defendant must have had notice of that action by the commencement of the suit, no notice of the claim of the lien is necessary under the first

198 Sup—40

section of the statute, but because there was no legal way by which the defendant could be notified of the employment of the attorney to prosecute the plaintiff's case, the statute provided for notice of his employment, and after judgment that would relate back to the time of the service of the notice of his employment and be the creation or passing of the passive or inchoate lien from the time of the service of such notice. The final judgment, verdict, report or decision determining the fact that the plaintiff had a cause of action and reducing the monetary value of that cause of action to a fixed sum here is necessary to the creation of the attorney's lien, under the second section of the statute as under the first. The lien upon the cause of action is given by the first section, and must be controlled by the terms of the first section, and under that section it is clear that the lien does not attach until there be a verdict, report, decision, or judgment in favor of the attorney's client. Pending the time of the commencement of the suit as fixed by the first section, or the notice required by the second section, it is equally provided that no settlement between the parties can affect the rights of the parties, whether made before or after judgment, and when the final judgment pending the cause of action is made under the first section, it relates back to the commencement of the action, and any settlement between that time and the final judgment will not affect the relations between the parties. So under the second section any settlement made between the parties between the time of the giving of the notice and final judgment shall not affect the attorney's lien. The lien referred to in the second section by the expression "attorney's lien as aforesaid" is the same lien that is given by the first section, and the whole purpose of the provisions of the second section in relation to the lien was for the

purpose of protecting the attorney's rights between the time of his employment and giving to the defendant notice thereof and the commencement of the suit. After that the first section must control. As this record shows that the settlement was made after the commencement of the action and before final judgment, we are only concerned with the construction of the second section of this act. We insist that there can be no enforcement of an attorney's lien until a final judgment has been rendered in favor of the attorney's client. Up to that time there is nothing to which the lien can attach, and the rule seems settled that in cases in the condition of the one at bar, that is, where the lawyer takes employment on a contingent fee, his client may not settle the case so as to deprive him of his fee, and the only way he can urge the enforcement of his lien is to prosecute the original suit to final judgment, and enforce his lien against that judgment, in doing which he must establish the plaintiff's right to recover on the state of facts existing at the time the case was first disposed of, independent of the question of fees. Trigg v. Chambers, 56 Ga. 279; Coleman v. Ryan, 58 Ga. 132; Swift v. Register, 97 Ga. 446; Rogers v. Furse, 83 Ga. 115; Brown v. Railroad, 101 Ga. 80; O'Brien v. Railroad, 50 N. Y. Supp. 159; Johnson v. McCurry, 102 Ga. 471; Smelker v. Railroad (Wis.), 81 N. W. 995; Railroad v. Givens, 13 Ky. L. R. 491; Nat. Ex. Co. v. Crane (N. Y.), 60 N. E. 768. (3) The lien should have been enforced against the sum of money in the hands of the original plaintiff. Such is the direct provision of the act, that the lien shall be enforced against the proceeds thereof in whosesoever hands they may come. This record shows that they were in the original plaintiff's hands, and the lien should be enforced against that fund. The St. Louis Court of Appeals, in Yonge v. Railroad, 109 Mo. App. 235, has very much misapprehended the New York statute, the Georgia and Wiscon-

sin statutes, and construes them quite differently from what the courts of those States do, and finally plants itself upon the broad ground that the Legislature has chosen to give a right of action simply for making the settlement. Fair dealing requires that this act shall have the construction that we maintain; that it be construed so as to rid the Attorney's Lien act of as many evils as possible; that it may not lead the members of the bar, as it has, into tempation that robs them of professional pride and makes the practice of the law in such cases mere commercialism; which has organized many law bureaus for the purpose of looking up such claims and prosecuting them on the percentage basis. This is apparent from the Yonge case, which is a fair sample of the kind. By this the lawyer loses professional pride, deprives himself of his desire to be an aid of the court in the correct administration of justice, and putting his personal interest in direct opposition to his professional duties, and leading him into every character of temptation. It seems the settled rule in this State that justices' courts have only such jurisdiction as is conferred by statute. Rocheport v. Bank, 75 Mo. App. 332; R. S. 1899, secs. 695, 3835.

*John B. Dempsey* for respondent.

(1) There is nothing in the Constitution of the State of Missouri, nor in the Constitution of the United States, which prohibits the Legislature from enacting the statute in question. Its power to enact laws similar in terms, scope and purpose has been upheld by this and other appellate courts, as will appear in their decisions sustaining our lien laws. Mechanic's lien, sec. 4203, R. S. 1899; landlord's lien on crops, sec. 4123, R. S. 1899; Henry & Coatsworth Co. v. Evans, 97 Mo. 47; Henning v. Stead, 138 Mo. 430; Bank v. Carswell, 126 Mo. 436; Davidson v. New Orleans, 96 U. S. 97. Legislation is not open to the charge of depriving one

of his rights without due process of law, if it be general in its operation upon the subject to which it relates. Dent v. West Virginia, 129 U. S. 124. And this is true even when applied to a single class. Railroad v. Humes, 115 U. S. 512; Railroad v. Mackey, 127 U. S. 205. An act which relates to persons or things as a class is a general law; it is only when it deals with particular persons or things of a class that it is special. State ex rel. v. Tolle, 71 Mo. 650. If this act be held not "due process of law" because it deals only with attorneys and their clients, and the debtors of the latter, then all statutes governing the affairs of one class of business now in force must be invalid. (2) The second section of the act gave the plaintiff a lien on the claim and cause of action of his client, French, which could not, after notice, be defeated by any settlement of the claim or cause of action had between French and the defendant without plaintiff's consent. Yonge v. Railroad, 109 Mo. App. 235; Laws 1901, p. 46. And when a statute confers on one a lien or right of action against another, but omits to provide the manner in which it shall be enforced, the party having such lien may proceed to enforce same by the usual common law remedy; that is, by an action at law corresponding to trespass on the case. Sedgwick, Stat. & Const. Law (2 Ed.), p. 74; Young v. Renshaw, 102 Mo. App. 184. Hence, the suit was properly commenced before a justice of the peace, the sum involved being within his jurisdiction. Secs. 6517 and 6519, R. S. 1899. (3) The provisions of the second section of the act in question render the act different to the laws of New York, Wisconsin and Georgia relating to the subject of an attorney's lien. Therefore, the cases cited from these States are inapplicable to a proper construction of the second section of the law in this State in question. Hence, plaintiff was not required to prosecute the suit of French v. defendant to final judgment, and then attach his lien to

the judgment so obtained, as was held under the statutes in force in some of the above-mentioned States. Nor was he required to pursue the fund created by the settlement while in the hands of his client. Yonge v. Railroad, 109 Mo. App. 235.

FOX, J.—This cause is brought to this court by appeal from a judgment of the circuit court of St. Louis in favor of the plaintiff and against the defendant for $41.66.

This action was commenced before a justice of the peace of the city of St. Louis. The statement, filed by plaintiff before the justice, alleged that he was an attorney and counselor at law; that defendant was a corporation, operating a street railway, and that on or about the 30th day of June, 1902, one Emma French sustained injuries to her person while alighting from one of defendant's cars, which she alleged to be due to the negligence of defendant's servants in charge of said car, whereby she became the "possessor of a subsisting claim and cause of action for $10,000 damages." That, thereafter, on the 8th day of August, 1902, said Emma French entered into a written contract with this plaintiff, employing and instructing him to enter and prosecute an action in her favor for said $10,000 damages against defendant, and that Mrs. French agreed that plaintiff should receive for his services for entering and prosecuting said action one-third of all of any sum of money that should be recovered in said suit, or by or through any compromise of said suit, without regard to the time at which said compromise should be made. That on the 9th day of August, 1902, plaintiff entered an action at law in favor of said Mrs. French on her alleged cause of action. That, thereafter, on the 3rd day of November, 1902, plaintiff served notice in writing of said contract of employment by Mrs. French, and that said action had been instituted in the circuit

court of St. Louis, Missouri, also showing the proportion of the recovery that plaintiff was to receive, either by suit or compromise of the same; and further alleged that, on the 25th day of November, 1902, Mrs. French and the defendant, herein, without the knowledge or consent of this plaintiff, compromised said action, and the said claim on which said action was based for the sum of $125, which sum was paid to Mrs. French by the defendant, and said Emma French then and there entered into a stipulation for the dismissal of said cause at her costs, which said stipulation defendant filed in said court, and the prosecution of said cause was dismissed, whereby plaintiff has been deprived of his fee; the insolvency of Emma French is alleged and judgment is prayed under the act of February 25, 1901. A suit was brought for the recovery of the sum of $41.66. The trial before the justice resulted in a judgment for $41.66 in favor of the plaintiff, from which judgment the defendant appealed by filing an affidavit and bond within the time required, and the cause was tried *de novo* in the circuit court on May 5, 1903.

There is no necessity for reproducing the evidence introduced at the trial of this cause in the circuit court, for appellant admits in its brief that the evidence preserved in the bill of exceptions substantially sustains the averments of the plaintiff's statement of this case, and there are no disputed facts in the case.

Upon the submission of the cause to the court there was a finding and judgment for the plaintiff in the sum of $41.66. Motions for new trial and in arrest of judgment were timely filed and were by the court overruled. From this judgment defendant prosecuted its appeal to this court and the record is now before us for consideration.

OPINION.

It is apparent from the record in this cause that the trial court made the order granting the appeal to this court for the reason that defendant challenges the constitutionality of the act upon which this proceeding is predicated. The contentions of appellant upon this constitutional question may thus be briefly stated:

1. That the act of February 25, 1901, upon which this action is based, is unconstitutional and void because in contravention of article 4, section 28, of the Constitution of Missouri, which substantially provides that no act shall contain more than one subject, which shall be clearly expressed in the title.

2. It is insisted that said act of February 25, 1901, is contrary to and violative of the provisions of article 2, section 30, of the Constitution of this State, which provides that no person shall be deprived of life, liberty or property without due process of law.

3. It is urged that this act is unconstitutional and void for the reason that it is in contravention of article 2, section 20, of the Constitution of Missouri, which substantially provides that "no private property can be taken for private use, with or without compensation, unless by the consent of the owner, except for private ways of necessity, and except for drains and ditches across the lands of others for agricultural and sanitary purposes, in such manner as may be prescribed by law; and that whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be really public shall be a judicial question, and as such judicially determined, without regard to any legislative assertion that the use is public."

4. It is contended by appellant that the act of February 25, 1901, is unconstitutional and void for the reason that it contravenes the provisions of section 1

of the fourteenth amendment of the Constitution of the United States.

This act of February 25, 1901, the constitutionality of which is challenged by appellant, was Senate Bill 9, head notes, ''Attorneys-at-Law:    Lien Upon Cause of Action,'' followed by the following title: ''An Act to prevent frauds between attorneys, clients and defendants; making agreements between attorney and client a lien upon the cause of action.''

There is no subject that has more frequently had the attention of this court than the one in which acts of the General Assembly have been challenged for failure to conform its legislation to requirements of section 28, article 4, of the Constitution of this State, which substantially provides that no bill shall contain more than one subject, which shall be clearly expressed in its title.  We deem it unnecessary, however, to review the numerous cases upon this subject, but shall be content with a brief reference to the rules to be deduced from the adjudications as to the objects and purposes sought by the framers of the Constitution in the enactment of such constitutional provisions.

It has been repeatedly stated by this court that the objects and purposes of this constitutional provision were to prevent incongruous, disconnected matters which had no relation to each other, from being joined in one bill; however, it has always been recognized that all matters that are germane to the principal subject and have a natural connection with it, might properly be incorporated in the same bill.   In Ewing v. Hoblitzelle, 85 Mo. 64, it was ruled: ''Where all the provisions of a statute fairly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, then the subject is single,  . . . . and, if it is sufficiently expressed in the title, the statute is valid.''   This rule was approved by Judge BLACK, in State ex rel. Attorney-General v. Miller, 100 Mo. 439,

citing, in support of such approval, City of St. Louis
v. Tiefel, 42 Mo. 578; State v. Mathews, 44 Mo. 523;
State v. Miller, 45 Mo. 495; City of Hannibal v. County
of Marion, 69 Mo. 571; and State ex rel. v. Mead, 71
Mo. 268, as substantially announcing the same rule as
approved in Ewing v. Hoblitzelle, supra. To the same
effect is State ex rel. v. Bronson, 115 Mo. 271, where
it was ruled that this section of the Constitution should
be reasonably and liberally construed and applied; due
regard being had to its object and purpose. It was
again announced in that case that if all the provisions
of the bill have a natural relation and connection, then
the subject was single, and this, too, though the bill con-
tains many provisions. In Lynch v. Murphy, 119 Mo.
163, the rule announced in the foregoing cases was ap-
proved and followed.

It is insisted by appellant that this act em-
braces more than one subject and is therefore viola-
tive of the constitutional provisions now being discuss-
ed. We are unable to give our assent to this contention.
It is clear that the subject of this act was the making
of agreements between attorney and client a lien upon
the cause of action, and the purpose of it was to prevent
frauds between attorneys, clients and defendants. The
contention upon this proposition is thus stated in the
brief by learned counsel for appellant:

"The Attorney's Lien act embraces four separate
and distinct subjects, to-wit:

"1. The subject of giving an attorney a lien upon
his client's cause of action or counterclaim, which
lien attaches to a verdict, report, decision or judgment
in his client's favor.

"2. The object of making it 'lawful for an attorney
at law either before suit or action is brought, or after
suit or action is brought, to contract with his client for
legal services rendered or to be rendered by him for a

certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action.'

"3.   The subject or object of making notice in writing to the opposite party that such legalized contract has been made, which notice creates a lien upon the claim or cause of action and upon the proceeds of any settlement thereof.

"4.   The subject of making defendant liable for in any manner settling any claim or suit after notice is served, without written consent of the attorney."

To fully appreciate this proposition it is well to know what are the provisions of the act to which the contentions of appellant are directed. It provides:

"Section 1.   The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the services of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be (effected) [affected] by any settlement betwen the parties before or after judgment.

"Sec. 2. In all suits in in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto,* it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or de-

fendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service(s) of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein; and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as herein above provided, between such attorney and his client." [Laws 1901, p. 46.]

A careful analysis of the foregoing provisions makes it manifest that the matters therein contained have a legitimate connection and relation to each other, and are clearly germane to the subject expressed in the title, of making agreements between attorney and client a lien upon the cause of action. The first section provides for the attorney's lien upon his client's cause of action or counterclaim. That section is clearly in harmony with the subject as expressed in the title. Section two provides the nature and character of the contract which the attorney is authorized to enter into with his client in all suits in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto*. This is clearly germane to the subject as expressed in the title, for the reason that

it deals with the agreement between the attorney and the client, which is to be made a lien upon the cause of action. Then follows the provision which must be treated as the incidents and means of accomplishing the purpose of the legislation, that is, the giving of the defendant notice of the agreement between the attorney and client, stating therein the interest the attorney has in such claim or cause of action, with the view that the defendant might regulate his dealing with the plaintiff, so far as adjusting or settling that cause of action, accordingly. Then follows the particular provision upon which the cause of action in the case at bar was predicated, that if any defendant or defendants, or proposed defendant or defendants, shall, after notice served as herein provided, in any manner settle any claim, suit, cause of action or action at law, with such attorney's client, before or after litigation instituted therein, without first procuring the written consent of such attorney, he or they shall be liable to such attorney for such attorney's lien as is provided by this act.

We think it is clear that all of the provisions of this act clearly relate to the same subject, have a natural connection with it, are the incidents or means of accomplishing it, and without the provision requiring defendants, after due service of notice, in lawsuits or contemplated lawsuits, from respecting the agreements between attorneys and clients, this legislation in behalf of the lawyers of this State would be of little avail in protecting them in respect to their lien upon the cause of action, as contemplated by this act.

It is also insisted that the title to this act does not sufficiently clearly express the subject as to meet the requirements of the constitutional provisions. In discussing this provision of the Constitution applicable to this subject, this court, in State ex rel. v. Ranson, 73 Mo. 78, said that "the adjudicated cases, as well

as the elementary writers, all concur that it was to prevent the vicious practice of conjoining, in the same bill, incongruous matters, and subjects having no legitimate connection or relation to each other, and in no way germane to the subject expressed in its title; that its object was to prevent surprise or fraud upon members of the Legislature, rather than embarrass legislation by making laws unnecessarily restrictive. [Cooley on Const. Lim., 174; City of St. Louis v. Tiefel, 42 Mo. 590.] Some of the adjudicated cases have construed this provision with some strictness, but in the majority of them the rule is otherwise. In the case of State v. Miller, 45 Mo. 497, this court uses this language: 'The courts, in all the States where a like or similar provision exists, have given it a very liberal interpretation, and have endeavored to construe it so as not to limit or cripple legislative enactments any further than what was necessary by the absolute requirements of the law.' Justice COOLEY, in his work on Constitutional Limitations, page 178, says: 'There has been a general disposition to construe the constitutional provisions liberally, rather than embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purpose for which it was adopted.' The Supreme Court of Louisiana, in commenting on argument of counsel, which demanded a strict construction of a constitutional clause like this, uses this language: 'We think the argument invokes an interpretation of the constitutional clause too rigorous and technical. If in applying it we should follow the rules of a nice and fastidious verbal criticism, we should often frustrate the action of the Legislature without fulfilling the intention of the framers of the Constitution.' [Succession of Lanzetti, 9 La. Ann. 333.]"

This court very clearly pointed out the rule which should be applied in the determination of the sufficiency

of the expression of the subject in the title of the bill in State ex rel. v. County Court, 128 Mo. 427; it was ruled that the mere generality on the title will not vitiate an act of the General Assembly unless the title is of such a nature as to compel a conviction that it was designed to mislead as to the subject dealt with. It is clearly the province of the lawmaking power to decide upon the title of an act and at least some deference must be paid to their decision, and an act should not be declared unconstitutional for the reason that it fails to clearly express the subject by its title, unless it clearly violates that command of the Constitution. [Dogge v. State, 17 Neb. 140.]

Applying the rule announced in the foregoing cases to this proposition, we are of the opinion that the subject of the act was sufficiently expressed in its title, and that the provisions of it are germane to the principal subject and have a natural connection with it, and we discover nothing, either in the title or in the provisions of the act, which were calculated to surprise or operate a fraud upon any of the members of the lawmaking power.

Nor is this act open to the charge of contravening other provisions of the Constitution indicated by appellant in its brief. It is clearly not class legislation, as insisted by learned counsel for appellant, on the ground that it simply applies to attorneys-at-law. The distinction between general and special laws has been very clearly drawn by numerous cases in this State. The rule upon this subject as announced by the Supreme Court of Pennsylvania in Wheeler v. Philadelphia, 77 Pa. St. 338, 348, has repeatedly met the approval of this court. It is there held "that a statute which relates to persons or things as a class is a general law, while a statute which relates to particular persons or things of a class is special." And it was said by this court in State ex rel. Lionberger v. Tolle,

71 Mo. 645, that the classification spoken of by the Supreme Court of Pennsylvania does not depend upon numbers. [McAunich v. Railroad, 20 Iowa 338, and State ex rel. v. Parsons, 40 N. J. L. 1, 8.] This distinction was followed and approved in State ex inf. v. Washburn, 167 Mo. 680; Hamman v. Central Coal & Coke Co., 156 Mo. 232; Lynch v. Murphy, 119 Mo. 173; State ex rel. v. Herrmann, 75 Mo. ·340; State ex rel. v. Miller, 100 Mo. 439; Ex parte Lucas, 160 Mo. 218; Ex parte Loving, 178 Mo. 194.

This act undertakes to cover a certain class of persons engaged in a particular profession. It does. not undertake to select any particular person ·in that class, but applies to all alike who fall within the class of attorneys-at-law.

The history of legislation in this State demonstrates that the lawmaking power found it essential for the purposes of legislation to divide both persons and business in separate classes, and it is now no longer an open question in the courts of this State that legislation applicable to a particular class is not violative of the constitutional provision which prohibits the enactment of special laws. That lawyers in this State belong to a particular class we think there can be no dispute, and we can see no reason, even though they be only lawyers, why legislation which deals in a general way with the affairs of that class, should be held unconstitutional. We have legislation in this State respecting other classes of persons, such as fellow-servants, mechanics, landlords, bankers, insurance laws and other legislation which have reference to only one line of trade or class of persons; yet, wherever· these laws have been in judgment before the courts of this State they have been held constitutional and valid. [Henry & Coatsworth Co. v. Evans, 97 Mo. 47; Hennig v. Staed, 138 Mo. 430.]

The object and purpose of this act, the validity of

which is challenged by appellant, was to provide a lien in favor of attorneys-at-law upon the cause of action, and we have repeatedly recognized the justness, as well as the constitutionality, of the lien provided for the mechanic and the landlord on crops made by his tenant, and we are unwilling to say that a lien provided for the legal profession should be ignored and held unconstitutional. While the business of these classes may be essentially different, we are unable to assign any legal valid reason why a distinction should be made against the legal profession. This act in no way deprives the defendant or anyone else of his rights without due process of law, and in view of the full discussion of that subject and the settled rules that have been made construing that part of the Federal Constitution, we deem it unnecessary to further discuss that proposition. [Davidson v. New Orleans, 96 U. S. 97; Sheppard v. Steele, 43 N. Y. 52; State v. Addington, 77 Mo. 110; Dent v. West Virginia, 129 U. S. 124; Railroad v. Humes, 115 U. S. 512; Railroad v. Mackey, 127 U. S. 205.]

It is insisted by appellant that this act restricts or destroys the defendant's right to contract. We are unable to give our assent to this insistence. The provisions of this act simply create a lien upon the cause of action in favor of the attorney-at-law, and requires the defendant, after due notice, which creates such lien in dealing with the party as to such cause of action, that such lien shall be respected. If we are dealing with the owner of a horse, and have notice that there is a valid subsisting lien upon the horse, we would not contend for a moment that such lien could be ignored. So it is in respect to other property—in dealing with the owner of it, if we have notice of the existence of a lien, such lien cannot be ignored. Is there any difference, if a defendant has notice of the existence of a

lien of an attorney upon a cause of action and the instances above cited? We think not. This law does not deprive a defendant of any of his rights. When the lien is created, in dealing with the plaintiff in respect to such cause of action he must act accordingly. It does not deprive him of the right to make a settlement, but in making such settlement it simply requires that he shall take into consideration the fact that the attorney-at-law has a lien upon the cause of action, and if such lien is ignored he will be required to account to him in an action at law for the amount of such lien.

This act is vigorously assailed by learned counsel for appellant on the ground that it tends to lead to the commission of unprofessional acts on the part of attorneys. This may be true in some instances, but the profession of law, when practiced upon a high plane, is an honorable one, and by no means should an act of the General Assembly, presumably enacted for the benefit of the honorable practicing lawyers of the State, be declared invalid for the reason that instances may arise by reason of the law which enable some of the less reputable attorneys to do acts which are not commendable along professional lines. In our opinion this law is constitutional and valid.

This brings us to the consideration of the only remaining proposition urged by counsel for appellant, that is, that plaintiff was not entitled to recover under the facts in this case.

It is first insisted by appellant that this action is for the enforcement of the lien and that the justice of the peace had no jurisdiction. It will be observed that this action is not strictly to enforce the lien provided by the statute, but is to recover the amount of such lien by reason of the failure of the defendant to recognize the lien in its settlement with the plaintiff. This cause of action is expressly provided for by the terms of the statute. This same proposition was involved in Yonge

v. Railroad, 109 Mo. App. 235. GOODE, J., speaking for the court in that case, thus very clearly and correctly stated the law applicable to it. He said: ''The second proposition which the defendant invokes is that Yonge should have sought to proceed with the case of Mrs. Hagan against the Transit and United Railways companies, notwithstanding the settlement; should hav interposed against the dismissal of that suit and carried it forward to a judgment for the amount of his demand. The statute in hand says in plain words that a defendant who settles with an attorney under the circumstances given, shall be liable to the attorney for that percentage of the proceeds which his contract with his client entitles him to receive. An express statutory liability of a legal character was thereby created, and as no particular or exclusive remedy was provided for its enforcement, it is enforceable by the usual common law remedy; that is, by an action at law corresponding to trespass on the case. [Sedgwick, Stat. and Const. Law (2 Ed.), p. 74, *et seq.*, and the cases cited in the foot notes.] The construction contended for by the defendants is clearly inadmissible in view of the provision that if a settlement occurs before an action is begun on the claim, the defendant is nevertheless liable. Of course, in such an instance, the attorney cannot go on with the prosecution of a suit in the name of his client, because there will be no suit pending for him to carry forward. In that contingency, unquestionably, an independent action can be instituted in his own name; and we discern nothing in the language of the statute which discriminates that contingency from one like the present, for the purpose of compelling the adoption of different procedures in two cases. So far as the enforcement of this lien is concerned, it strikes us as resembling the statutory lien on crops, which a landlord may make effective by suing one who purchases the crops on demised premises from the tenant

with knowledge of the landlord's lien." Referring to the purposes of the provisions of this act, the court during the course of the opinion stated that "they indicate a purpose on the part of the Legislature to prevent a defendant, actual or potential, in an action sounding either in contract or tort, from settling with the claimant so as to cut out the claimant's attorney from a contingent compensation to which the attorney is entitled under a contract. We see no reason why Yonge was not within the protection of this statute. He had a contract with Mrs. Hagan which stated definitely what percentage of any sum collected under it, with or without suit, should be his. The defendants had notice of that contract and settled with Mrs. Hagan in disregard of it. According to the plain language of the statute, they could only make a settlement with her which would be binding on Yonge and exonerate them from liability to him, by first obtaining his written consent. The statute says, in effect, that if a settlement was made without his written consent, as it was, the companies are liable to him for his portion of the proceeds."

In Young v. Renshaw, 102 Mo. App. 173, the St. Louis Court of Appeals very clearly pointed out the nature and character of the cause of action under the provisions of this statute. BLAND, J., speaking for the court in that case, said: "Under the provision of the first section of the act, the lien of an attorney attaches when the suit is commenced or service of an answer containing a counterclaim is made. If the attorney and client enter into a contract that the former shall receive as compensation for his services, a percentage of the amount recovered or realized, and the attorney serves a written notice on the defendant or proposed defendant, of the agreement between himself and client, the lien attaches to the matter or cause of action from the date of the service of such notice, although no suit

has been commenced, and if the claim is settled by the client with the defendant or proposed defendant, in disregard of the attorney's rights, after the defendant has been served with such notice, he will be individually liable to the attorney, as per his contract with his client.''

The cause of action set forth in the statement before the justice of the peace brought it clearly within the provisions of the statute, and the amount sued for was within the jurisdiction of the justice and the justice had jurisdiction to try and determine the cause.

We deem it unnecessary to pursue this subject further. The cases of Young v. Renshaw and Yonge v. Railroad, by the St. Louis Court of Appeals, correctly announce the law as applicable to the lien of an attorney under the act upon which this proceeding is predicated, and they fully meet the approval of this court.

There is no merit in the insistence of appellant that the court erred in its refusal to make a finding of the facts in this cause. In the first place, the bill of exceptions, as shown in the abstract of record, discloses that there were no objections or exceptions preserved to the refusal of this request. Secondly, it is expressly admitted by counsel for appellant in their brief that there was no dispute about the facts; that the proof in this cause establishes the allegations as contained in the statement of the cause of action before the justice of the peace; that being true there was no necessity for a finding of the facts. Under the plain admission of counsel at the close of the evidence in this case there was nothing left except a question of law.

We shall not prolong this opinion to discuss the numerous instructions requested by the defendant and refused by the court. They have had our most careful consideration. There were nineteen instructions re-

quested in this cause; clearly more than there was any necessity for; a practice which has repeatedly met the disapproval of this court. They were all refused with the exception of one, and in our opinion properly so.

We have indicated our views upon the propositions presented by the record in this cause, which results in the conclusion that the judgment of the trial court should be affirmed, and it is so ordered. All concur.