**Bernard PASSER, Respondent,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, and Robert L. Shirkey, Appellants.**

and

**Jennie McCLEAN, Appellant,**

v.

**Bernard PASSER, Respondent.**

No. 60608.

Supreme Court of Missouri, En Banc.

Feb. 13, 1979.

Rehearing Denied March 13, 1979.

Robert L. Shirkey, pro se.

Jack B. Robertson, Kansas City, for appellants.

William H. Pickett, Pickett & Midkiff, Kansas City, for respondent.

FINCH, Senior Judge.

This consolidated appeal was ordered transferred under Mo.Const. art. V, § 10, after opinion by the Missouri Court of Appeals, Western District. It involves two cases concerned with Bernard Passer's claim that he was entitled to a statutory attorney's lien under § 484.140 [1] in connection with his representation of Jennie McClean on her claim for personal injuries. Although we reach a result different than

1. All statutory references are to RSMo 1969 unless otherwise indicated.

that reached by the court of appeals, we use portions of its opinion (without quotation marks) in stating the facts.

On June 4, 1966, McClean suffered serious injuries when an automobile in which she was a passenger and which was driven by Charles Gallipeau was involved in a collision. She was taken to Kansas City General Hospital. She knew Passer, having done some secretarial work for him, and the next morning she got in touch with him and asked him to come to the hospital. Passer did so and McClean asked him to help her in being transferred to Research Hospital. Passer said that in order to assist her he would have to become her counsel. McClean agreed to this. Passer produced a form contract of employment which McClean executed, thereby employing Passer to represent her and prosecute her claim against Gallipeau and the driver of the other vehicle, Houchins, on a 50% contingent fee basis.

Passer wrote to Gallipeau on June 10, 1966, as follows:

"Dear Mr. Gallipeau:

"This is to advise you that I have been retained by Miss Jennie McClean to represent her in her claim against you for personal injuries received as a result of an automobile accident in which you were involved with another car driven by Clifford Houchins on or about June 3 or 4, at or near Seventh Avenue and Wyandotte Street.

"I will appreciate your forwarding this letter on to your carrier so that they will have a record of this lien.

"Thanking you, I remain,

Sincerely,

Bernard Passer"

As suggested in the letter, Gallipeau forwarded the letter to United States Fidelity & Guaranty Company (U.S.F.&G.) his insurer, which acknowledged receipt of the letter. Passer then contacted U.S.F.&G. and expressed an interest in settlement. U.S. F.&G. made payment on McClean's medical expenses under the medical expense coverage of its policy with Gallipeau and on August 17 offered Passer $4,500 in settle-ment. Passer refused the offer, demanding $45,000 from both U.S.F.&G. and Houchin's insurance carrier. Passer continued to deal with U.S.F.&G., assisting McClean in obtaining medical payments as late as November 10. He continued to refuse the $4,500 settlement offered by U.S.F.&G.

According to Passer, McClean wanted to settle her case, but she agreed that the $4,500 offer was wholly inadequate and did not complain to him about his efforts in her behalf. Passer planned to visit his children in school in the east over the Thanksgiving holiday. Before he left, he dictated a petition to be filed which McClean was to type and have ready for filing upon Passer's return.

Instead of preparing the petition, McClean wrote a letter to Passer, dated November 25, 1966, as follows:

"On June 3rd, 1966, I was involved in an automobile accident, at which time you were kind enough to help me and advise me as to what steps should be taken in regard to this matter. At that time I retained you to represent me in this matter.

"At the present time, I am rather confused about my case and feel that I must seek advice in addition to that which you have given me. I realize that you have been acting in my best interests and I do appreciate all that you have done for me in this regard. However, since I do feel that I need additional advice, this letter will serve as written notice to terminate your services as my counsel, effective this date.

"At this time and prior hereto, I have explained to you that I do not wish to file suit in this matter. I am sure that you can appreciate why I have taken the above measures.

"When I have retained the services of another attorney, you will be contacted immediately in regard to monies due you for work done to this point and arrangements will be made to take care of this matter.

"Our business association for the past year has been a pleasant one and one which I have enjoyed and appreciated.

"Thanking you for all that you have done for me, I remain,

"Very truly yours,

"[/s/] Miss Jennie McClean"

McClean then contacted Robert L. Shirkey and requested that he handle her case. Shirkey recognized the problem presented by McClean's contract with Passer. He wrote Passer that McClean was interested in employing him and discussions and correspondence between Passer and Shirkey over a division of the fee followed. McClean got in touch with Mr. Arthur Stoup, President of the Kansas City Bar Association, and sought his assistance. Stoup attempted to mediate the differences between Shirkey and Passer.

On March 9, 1967, McClean signed an agreement to employ Shirkey in the matter on a contingent fee of 50% of the first $6,500 of recovery and one third of the balance of any recovery. Shirkey advised Passer of the arrangement and offered to divide any fee equally between them. Passer demurred and correspondence between the two continued until as late as July, 1968, without resolution of the problem.

In the meantime, in June, 1967, Shirkey filed suit on behalf of McClean in the Jackson County Circuit Court, seeking $50,000 damages against Gallipeau and Houchins. Gallipeau forwarded the petition and summons to U.S.F.&G. U.S.F.&G. had previously been in touch with Passer about his withdrawal from the case. Passer wrote U.S.F.&G. that Shirkey had become an associate in the case and would assume control of it. Memos in U.S.F.&G. files on dates of June 7 and 9, 1967, noted that Passer wanted his name on all checks or drafts.

McClean's case came to trial in April, 1970, with Shirkey handling the matter, and resulted in a verdict in favor of McClean and against Gallipeau for $27,500. On May 15, 1970, Shirkey wrote Roy A. Larson, Jr., attorney for U.S.F.&G., and told him that McClean was willing to settle her claim for the amount of coverage Gallipeau had. A

copy of the letter went to Gallipeau and on June 1, 1970, he wrote Larson, requesting that the offer of settlement within his policy limits of $25,000 be accepted.

Larson forwarded the letter to U.S.F.&G., with a comment that the verdict in excess of the policy limits raised a question of how to post an appeal bond and that Gallipeau's demand increased U.S.F.&G.'s "exposure" an additional $2,500. On July 27, Larson advised U.S.F.&G. that their motion for new trial had been overruled on July 24 and that notice of appeal would have to be filed by August. Larson again noted the problem that the verdict in excess of policy limits presented with regard to the appeal bond.

A notice of appeal was filed but negotiations between Shirkey and Larson resulted in an agreement to settle McClean's claim for $23,000. On September 3, 1970, Larson wrote Shirkey, confirming the settlement agreement, but noting that a problem existed because of Passer's interest. Larson stated that, in view of Passer's lien letter received by U.S.F.&G., "any payment made to Miss McClean must protect the lien of Mr. Passer unless he releases the same in writing * * *." Larson asked for suggestions as to how the matter should be handled.

Shirkey informed Larson that McClean was unwilling to accept any settlement which involved Passer's name appearing on the check. Shirkey and Larson worked out an arrangement whereby Shirkey would file a declaratory judgment action to determine what fee, if any, Passer was entitled to. Shirkey agreed that he and McClean would enter into a written agreement to indemnify U.S.F.&G. against any loss by reason of payment of the settlement. Shirkey requested payment by draft payable to McClean and himself. Larson, however, wanted payment by U.S.F.&G. to be made to the circuit court. A draft payable to the circuit clerk was obtained. On September 16, 1970, Shirkey and Larson met at the courthouse in Independence. A draft for $23,000, payable to the circuit clerk, was presented to the clerk who endorsed it to

Shirkey and McClean. Satisfaction of the judgment was entered and the indemnity agreement was executed by Shirkey and McClean and delivered to Larson. Shirkey deposited the check and after deducting expenses of $1,796.90, disbursed $10,601.55, one half of the balance, to McClean and placed the remaining $10,601.55 in a trust account pending determination of the fee matter.

According to Passer, he was aware of the verdict in the case and knew that an appeal was filed but he was not informed of the settlement arrangement when it was made. He said that he met Shirkey from time to time and asked how the case was coming along and Shirkey replied "fine" but that was all that was said. On about January 10, 1971, he ran into Shirkey, asked about the case and was told that it had just been settled. Passer suggested that they go to Shirkey's office and settle the fee matter. Shirkey said he was busy and suggested Passer call the next week. Passer did so, but Shirkey put him off. Finally, after a week, Passer saw Shirkey in his office and Shirkey told him "You have nothing coming. You don't have a contract with Jennie."

On January 20, 1971, Passer wrote Shirkey, expressing dissatisfaction with Shirkey's failure to inform him of the settlement. He demanded $4,208.33 as his share of the fee. He made a similar demand of U.S.F.&G. Larson replied on behalf of U.S. F.&G., enclosing a copy of the indemnity agreement and suggesting that any obligation with respect to Passer's fee must be borne by Shirkey and McClean. Larson also addressed a letter to Shirkey and McClean, demanding that they resolve the differences with Passer in accordance with the terms of the indemnity agreement.

On January 29, 1971, Shirkey filed a declaratory judgment action on behalf of McClean against Passer, seeking a declaration as to what attorney's fee, if any, was due from McClean to Passer. Shortly thereafter Passer filed his suit against U.S. F.&G. and Shirkey. Count I thereof sought to enforce a statutory attorney's lien under

§ 484.140 against U.S.F.&G. Count II, which Passer ultimately elected not to submit to the jury, sought recovery for interference with economic relations arising from the contract between Passer and McClean. Count III sought actual and punitive damages against both defendants for an alleged conspiracy to deprive Passer of his statutory attorney's lien.

Passer's action was tried first and resulted in a directed verdict in his favor against U.S.F.&G. for $10,601.55 on Count I of his petition. Count III, the conspiracy charge, was submitted to the jury and resulted in a verdict of $5,300 actual damages against U.S.F.&G. and Shirkey, plus punitive damages of $25,000 against U.S.F.&G. and $2,000 against Shirkey. Upon overruling defendants' post-trial motion, the trial court reduced the recovery under Count I to $5,300, the amount of the actual damages fixed by the jury on Count III, and ordered only one satisfaction of that amount. Judgment on the verdict was entered accordingly and U.S.F.&G. and Shirkey appealed.

After judgment had been entered in Passer's suit, the declaratory judgment action came on for trial. Counsel for Passer informed the court that his client was seeking no money from McClean under his contract with her. The trial court then found that said concession constituted a covenant by Passer not to sue McClean, leaving nothing to adjudicate with reference to McClean's obligation to Passer. Judgment was entered accordingly and McClean appealed.

## PASSER v. U.S.F.&G. AND SHIRKEY
### COUNT I

In this case Passer sought to recover from U.S.F.&G. on the basis that his letter of June 10, 1966, to Charles Gallipeau created a statutory attorney's lien which was applicable to the amount paid by U.S.F.&G. to McClean in satisfaction of her judgment for personal injuries. The answer of U.S. F.&G. admitted receipt by it of said letter but denied that it gave Passer a statutory lien on the money paid by U.S.F.&G. It also pleaded various other defenses, none of

which we need consider in view of the disposition we reach.

Sections 484.130 and 484.140 relate to compensation of attorneys for representation of clients and to liens therefor. Section 484.130 is a general section which grants a lien from the time of commencement of a suit or counterclaim to cover compensation pursuant to an agreement, express or implied, which is not restrained by law. Section 484.140 is a special statute which is restricted to contingent fee contracts whereby compensation of an attorney is limited to a portion or percentage of recovery and is contingent on successful resolution of the client's claim by either settlement or suit. Passer did not file suit on behalf of McClean and does not assert a claim under § 484.130. We are not concerned with that section in this case.

Passer's claim is based on § 484.140 which provides:

"In all suits in equity and in all actions or proposed actions at law, whether arising ex contractu or ex delicto, *it shall be lawful for an attorney at law either before suit or action is brought, or after suit or action is brought, to contract with his client for legal services rendered or to be rendered him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action, then said agreement shall operate from the date of the service of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof*, which the client may have against the defendant or defendants, or proposed defendant or defendants, and cannot be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and any defendant or defendants, or proposed defendant or defendants, who shall, after notice served as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as herein provided between such attorney and his client." (Emphasis supplied)

Section 484.140 serves two purposes. It authorizes contingent fee contracts whereby an attorney agrees to furnish legal services "for a certain portion or percentage of the' proceeds of any settlement of his client's claim or cause of action * * *." Second, it provides that under certain circumstances the service of notice of that contract shall cause the agreement to operate as a lien which shall have the effect spelled out in the section. In providing for such lien the statute states that upon service on defendant or defendants by the attorney of a written notice "that he has such an agreement with his client, stating therein the interest he has in such claim or cause of action * * *" the agreement shall operate as a lien.

What does this second portion of § 484.140 mean? Does it require, as contended by U.S.F.&G., that the notice specify that the attorney has a contingent fee contract and the percentage or amount of the fee? If so, Passer's letter to Gillipeau of June 10, 1966, was insufficient. It merely stated that he had been retained to represent Miss McClean. Or does it mean, as Passer asserts, that a letter or notice advising that the attorney has been employed is sufficient to comply with § 484.140 and to establish a lien? This is what Passer's letter of June 10, 1966, stated.

The briefs on behalf of appellants and respondent cite various cases in support of their respective interpretations of § 484.140.

None have dealt specifically with the issue of whether the statute requires that the notice specify that the attorney has a contingent fee contract for a specific percentage or amount of the recovery. Passer's brief recognizes this, saying: "There is * * no case law to this effect, and the question would appear to be a matter of first impression in this state."

We agree. There has been no definitive ruling on this precise question. Several cases have involved factual situations wherein the attorney had given notice which included information as to the terms of his contingent fee contract. These include *Wait v. Atchison, T. & S. F. Ry.*, 204 Mo. 491, 103 S.W. 60 (1907); *O'Connor v. St. Louis Transit Co.*, 198 Mo. 622, 97 S.W. 150 (1906); *Brookshire v. Metropolitan Life Insurance Co.*, 56 S.W.2d 817 (Mo.App.1933); *Abbott v. United Rys. Co.*, 138 Mo.App. 530, 119 S.W. 964 (1909). Hence, these cases did not present for decision the question of whether the notice must include such information.

In other cases no notice of any kind was given and the cases were decided on that basis. These include *Orr v. Mutual Benefit Health & Accident Association*, 240 Mo.App. 236, 207 S.W.2d 511 (1947); *Passer v. Berkenmaier*, 183 S.W.2d 150 (Mo.App. 1944); *Hull v. Phillips*, 128 Mo.App. 247, 107 S.W. 21 (1908). It should be noted, however, that in the latter two cases the court indicated in dicta that the notice of lien must give information as to the attorney's percentage. In *Passer* the court said at 152: "If a percentage agreement exists and notice be given as required by said section, then such agreement operates as a lien from the date of the service of such notice. Notice in writing must be given by the attorney that he has such an agreement with his client, stating therein the interest he has in his client's cause of action." In *Hull* the court said, 107 S.W. at 22: "[W]e find the record does not show that such attorney ever notified plaintiff that he had a contract for a certain per cent. of what was recovered, as is required he should do by section 2, Laws 1901, p. 46 [Ann.St.1906, § 4937–2]."

In *Fein v. Schwartz*, 404 S.W.2d 210 (Mo. App.1966), the attorney had a contingent fee contract for 5% of the total received by the property owner for property to be taken by the redevelopment authority. The contention was made that the notice served by the attorney was insufficient because it failed to state the interest in the client's claim or cause of action. It stated that the contract was "for a professional fee in a very substantial amount (approximately $15,000)." In overruling that contention the court said at 227: "While the exact amount found to be due was $14,600, we think the interest as shown in the attorney's lien notice is a sufficient statement of the interest had by attorney and sufficiently complies with the requirements of § 484.-140." This case at least inferentially recognized that the statutory notice is to recite the attorney's interest in the claim.

In *Simpson v. Federal Lead Co.*, 187 S.W. 1123 (Mo.App.1916), the opinion recited that the attorney had contracted with his client on a contingent fee basis. In considering whether notice sufficient under the statute had been given the court said at 1124: "On the following day, to wit, June 17, 1913, plaintiffs wrote a letter to defendant company advising defendant that they represented Pomerko. This letter, however, did not purport to comply with the terms of the statute respecting the written notice required to be given thereunder." The court went on to note that subsequently defendant was furnished a signed copy of the contingent fee contract. This was held to have given defendant sufficient notice under the statute. Again, the court's discussion indicates a recognition that § 484.140 calls for information which informs defendant of the attorney's interest under his contingent fee contract.

Since there are no cases resolving this question, we look to the language of the statute for the requirements as to what the notice shall contain. Section 484.140, in speaking of the notice, says that it shall state "that he has such an agreement with his client." The preceding portion of the section deals exclusively with contingent

fee contracts. Hence, when it then speaks of *such* agreement, it necessarily refers back to a contingent fee contract discussed and authorized in the preceding language. Thus, the statute says that the notice shall state that the attorney has a contingent fee contract with his client. Next, the section goes on to provide that the notice shall state "the interest he has in such claim or cause of action." This obviously calls for something in addition to the statement, already required, that the attorney has a contingent fee contract. That additional something, consisting of the attorney's interest in his client's claim, is the percentage or amount which the contingent fee contract gives him. This is the clear meaning of the language. As previously noted, dicta in several earlier cases has so recognized.

This interpretation of § 484.140 is supported by the interpretation the Illinois courts have given their comparable attorney's lien statute, Ill.Ann.Stat. ch. 13, § 14 (Smith-Hurd), which requires attorneys to state in their notice "the interest they have in such suits, claims, demands or causes of action." In *Mayer v. Yellow Cab Co.*, 247 Ill.App. 42 (1927), an attorney had a contingent fee contract to pursue a personal injury claim for ⅓ if the suit was settled, and ½ if it went to trial. The lien letter stated that he had been hired as an attorney and that he claimed a lien on the cause of action. The court found the notice defective because "it did not state the interest which petitioners had in the damage suit in question." *Id.* at 47. In *Cazalet v. Cazalet*, 322 Ill.App. 105, 54 N.E.2d 61 (1944), the court declined to pass directly on the sufficiency of the notice because it concluded it was not properly served. However, in dicta the court said: "The purported notice contains neither a notice of the amount of the fee contracted for, which is one of the express provisions of the statute, nor of any claim for lien, as provided in and required by said section." 54 N.E.2d at 64.

We hold that Passer's letter of June 10, 1966 did not fulfill the requirements of § 484.140 for a notice to defendant of the attorney's lien because it failed to advise that he had a contingent fee contract for 50% of the recovery.

■ Passer suggests that even if his letter of June 10, 1966, was insufficient notice under § 484.140 to create a lien in his favor, U.S.F.&G. and Shirkey by their conduct waived or are estopped to assert any defects therein. Both estoppel and waiver are affirmative defenses. Rule 55.08 V.A.M.R. Passer did not plead such defenses and they are not before us for consideration.

Finally, Passer says that if the court holds that § 484.140 requires that a notice of lien thereunder state that the attorney has a contingent fee contract and the per cent or amount thereof, such interpretation should be held to be prospective only. While not clearly expressed, Passer apparently is saying that we should simply announce that the statute shall be so construed in the future but that it does not apply to his letter.

■ We reject this request. In the first place the cases [2] which he cites do not support the suggestion made. They hold that the attorney's lien statute (now § 484.140) will not operate to create a lien where the contracts on which the liens are based were entered into before the date on which the act was passed. They are not authority for holding that when a statute is interpreted the statute as so interpreted operates prospectively from the date of the interpreting decision. Generally, a statute becomes effective when it has been adopted and approved by proper authority unless it provides otherwise. *State v. Kirby*, 163 S.W.2d 964 (Mo.1942). Section 484.140, as we interpret it, was applicable to Passer's effort to create a statutory attorney's lien.

It follows that the trial court erred in overruling U.S.F.&G.'s motion for directed verdict on Count I and erred in directing a

2. *Wait v. Atchison, T. & S. F. Ry.*, 204 Mo. 491, 103 S.W. 60 (1907); *O'Connor v. Transit Co.*, 198 Mo. 622, 97 S.W. 150 (1907); *Imboden v. Renshaw*, 102 Mo.App. 173, 76 S.W. 701 (1903).

verdict for plaintiff. The judgment on Count I is reversed.

## COUNT III

■ As previously noted Count III sought recovery of actual and punitive damages from U.S.F.&G. and Shirkey for conspiring to settle McClean's case without honoring Passer's statutory attorney's lien. Maintenance of such a cause of action presupposes existence of evidence sufficient to justify submission to the jury of the issue of whether Passer had such a lien. We have held with reference to Count I that Passer's notice did not comply with § 484.140 and as a consequence he did not have a statutory lien. That being true defendants could not be found *guilty* of conspiring to defeat enforcement of a non-existent statutory lien in favor of Passer. Accordingly, the judgment on Count III is reversed.

## McCLEAN v. PASSER

In this declaratory judgment action McClean alleged the execution of a contingent fee contract on June 10, 1966, alleged the claims being asserted thereunder by Passer, asserted that there was a controversy as to whom, if anyone, McClean was indebted to under said contract and asked the court to declare the rights and duties of Passer under said contract. In his answer Passer asked that he be awarded a judgment of $4,208.33. In answers to McClean's request for admissions, Passer denied a proposed admission that he was not entitled to any sums from McClean under the contingent fee contract and denied a proposed admission that McClean was not indebted to him for any services rendered. Thus, in both his answer and in his responses to requests for admissions, Passer asserted that McClean was indebted to him for an attorney's fee.

The case came on for trial before a jury. After the jury panel had been sworn, counsel for Passer, in proceedings in chambers, indicated to the court that Passer was not seeking monetary relief from McClean and

he would not seek a judgment against her in the future. However, after considerable colloquy between counsel and the court the attorney for Passer said:

"I believe for the record, it should be made clear that I did not say that Miss McClean was not legally indebted to Mr. Passer. I said that Mr. Passer does not look to Miss McClean for any monies arising out of any contractual relationship he has ever had with Miss McClean. I did not state on behalf of my client that she is not legally obligated under that particular contract."

Subsequently, the court entered this judgment memorandum:

"COUNT I

"On the basis of the Defendant's statement made in open court on the record, which the Court interprets as a covenant on his part not to sue the plaintiff on the alleged contract, without finding whether the plaintiff may or may not be legally obligated under the contract, on the basis of his covenant not to sue, finds that plaintiff is not indebted to the defendant on the contract because there is a solemn covenant not to sue. Since the defendant could have, and has, in the Court's opinion, and the record will demonstrate, has made a covenant not to sue plaintiff, plaintiff has no obligation—there is nothing to declare for the Court as far as any obligation or not of the plaintiff to the defendant or defendant to the plaintiff. "COUNT II—Plaintiff voluntarily dismisses Count II with prejudice.[3]

"Dated 6–11–75

"FILED June 11, 1975

/s/ Robert A. Meyers
Judge"

McClean filed a motion to amend the judgment and for a new trial which the court overruled. McClean then appealed and now takes the position that under the pleadings there is a justiciable controversy which the court should have decided. She argues that she has funds from her personal

---

3. Count II was a claim by McClean against Passer for stenographic services for which payment allegedly had not been made. We are not concerned with it in this appeal.

injury settlement and that Passer has claimed an interest therein to the extent of $4,203.33. She points out that Shirkey is in possession of the questioned funds and that she is entitled to that money if Passer has no right to it. That question, she argues, should be resolved.

■ We conclude that McClean is entitled to have her declaratory judgment action decided. The trial court expressly avoided deciding the issue by holding that the verbal statement by counsel for Passer amounted to a covenant not to sue. "A covenant not to sue is nothing but a contract, and should be so construed." 66 Am. Jur.2d 679. See also 76 C.J.S. Release § 3, p. 630. A covenant not to sue requires a consideration for such promise. Since there was no such consideration, there was no binding covenant not to sue. Counsel's statement did not resolve the issue raised by McClean's petition, nor did the judgment entered decide the issues. Accordingly, the judgment is reversed and remanded.

MORGAN, C. J., BARDGETT, J., and SIMEONE, Special Judge, concur.

DONNELLY, J., dissents in separate dissenting opinion filed.

RENDLEN, J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

SEILER, J., dissents in separate dissenting opinion filed and concurs in separate dissenting opinion of DONNELLY, J.

WELLIVER, J., not participating because not a member of the Court when cause was submitted.

DONNELLY, Judge, dissenting.

The principal opinion holds that a verdict should be entered for defendant on Count I. Its basis for this holding is "that Passer's letter of June 10, 1966 did not fulfill the requirements of § 484.140 for a notice to defendant of the attorney's lien because it failed to advise that he had a contingent fee contract for 50% of the recovery." In so doing, the principal opinion ignores the ultimate and determinative fact on the question of notice: the repeated acknowledgment by U.S.F.&G. of Passer's lien.

I respectfully dissent.

SEILER, Judge, dissenting.

I concur with Judge Donnelly in his dissent, agreeing that USF&G had notice of Passer's lien.

I respectfully add that this case was tried, by all parties, on the theory that both USF&G and Mr. Shirkey had, by their conduct, treated Passer as having a valid and subsisting lien. The whole object of what USF&G and Shirkey did was to avoid having to include Passer in the settlement despite his lien. There is no evidence, as far as I can determine, to support the proposition that either USF&G or Shirkey ever questioned Passer's lien on the ground that Passer's lien letter failed to state what his percentage was. In fact, as the principal opinion notes, USF&G's attorney expressly acknowledged the existence of the lien in his letter of September 3, 1970 to Shirkey. The trial judge, in pre-trial rulings in chambers prior to impaneling the jury, characterized the claim that the lien letter was not sufficient as an "afterthought."

The trial judge stated as follows:

"I think this also tells the parties, as these documents will show, was such that everybody assumed that he did have a lien. In much of the dealings between the plaintiff and the insurance company, between the plaintiff and defendant Shirkey, and between Shirkey and the insurance company, nobody ever questioned whether or not he had a valid lien. This apparently, that the letter wasn't sufficient, is an afterthought. I think certainly with all the dealings that there were among the three entities here involved, the plaintiff and two defendants, that it would be grossly unfair at this stage to say, 'Well, we decided that your letter wasn't sufficient.'

"I feel quite sure that the plaintiff would be protected against such a conclusion or such a result by some equitable principle, such as estoppel or laches. . . .

[T]he refusal to honor the plaintiff's lien had nothing to do, even in the final analysis—had nothing to do with whether he stipulated the percentage. . . . The insurance company did it because they could save four thousand dollars on the judgment, and because they got Mr. Shirkey's indemnity. . . . They were aware—the documents show that they were aware, that they hesitated to go ahead with it, and when Shirkey said, 'I will indemnify you,' they said, 'That is okay. That solves our problem.' . . They didn't refuse to honor it because of the insufficiency of the notice.

". . . They didn't care what the percentage was. They simply weren't going to acknowledge it, and, so, they are not in position to claim that they didn't have adequate notice."

There was no objection to the court's ruling by counsel for USF&G. The only objection made by counsel for defendant Shirkey was not on the ground that Passer had failed to file a reply pleading waiver or estoppel. The objection was that the court's remarks assumed that Passer had a valid contract, which counsel said was "highly disputed."

It seems to me, therefore, that Passer is entitled to assert in this court that the defendants are estopped from asserting or have waived any claim that the lien letter was insufficient on the ground now contended. Certainly defendants, under the record before us, were in no way mislead or prejudiced by Passer's failure to plead waiver and estoppel in a reply. I would apply rule 55.33(b), which provides: "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In fact, rule 55.33(b) provides further that amendments of the pleadings to conform to the evidence in such instances may be made at any time, even after judgment, but even if not done, such failure shall not affect the result of the trial of such issues.

I would affirm the judgment on Count I, and then would deal with Count III on the merits.