YONGE, Plaintiff in Error, v. ST. LOUIS TRANSIT COMPANY et al., Defendants in Error.

St. Louis Court of Appeals, December 13, 1904.

1. ATTORNEYS: Lien Upon Cause of Action: Proceeds of Settlement. Under the second section of the act approved February 25 1901, Session Acts of 1901, page, 46, the lien of an attorney upon the claim or cause of action which he is employed for a percentage to prosecute, and on the "proceeds of any settlement" of the same, attaches before "a verdict, report, decision or judgment" in favor of the claimant and before action is brought.

2. ———: ———: Attorney's Remedy. And after notice, as provided in said section, of the attorney's contract and claim, a defendant, who settles with the claimant without the consent of the attorney, in the absence of a special remedy provided by the statute, is liable, in a direct action at law for that purpose, to the attorney for that percentage of the proceeds of such settlement which his contract with his client entitled him to receive.

3. ———: ———: ———. To carry forward the original suit to a judgment for the amount of the claim is not the proper remedy.

4. ———: ———: Merits Immaterial. And in such an action, it is not necessary for the attorney to show that his client had a meritorious case, because the lien attaches to a "claim" or cause of action and the proceeds of a settlement of the same.

5. ———: ———: Client's Solvency. The fact that the client was solvent and liable for the stipulated portion of the proceeds of the claim is not a defense to an action by the attorney against the defendant who settles with the client without his consent.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED.

*John M. Dickson* for plaintiff in error.

*George W. Easley* and *Boyle, Priest & Lehmann* for defendants in error.

### STATEMENT.

A car belonging to the St. Louis Transit Company ran over and killed Frank Hagan, at that time, the husband of Annie Hagan. The accident occurred March 1, 1902, on Pine street in the city of St. Louis. The widow entered into a written contract with plaintiff Yonge, June 10, 1902, by which she employed him to prosecute her claim for damages for the death of her husband against the United Railways Company and the St. Louis Transit Company. The contract contains, among other clauses, these:

"Now, therefore, in consideration of the agreement of said party of the second part to prosecute said action for damages to final judgment against the said United Railways Company and the St. Louis Transit Company, the said party of the first part hereby agrees to pay to him as full compensation for such services, thirty-three and one-third per cent of all moneys that shall be recovered in said cause, either by a compromise of the same before judgment or after a final judgment shall have been obtained against the said United Railways Company and St. Louis Transit Company.

"That this contract for attorneys fees shall be a lien upon all money due or payable to said party of the first part by the said United Railways Company and St. Louis Transit Company, for or in consideration of the death of the said Frank Hagan, for the percentage of the same as herein stated.

"That if a compromise of said claim for damages shall be made, no agreement of settlement shall be bind-

ing upon the parties hereto without their mutual con-
sent."

Yonge filed suit in the name of Mrs. Hagan against
the two companies June 11, 1902, on which day a sum-
mons issued returnable to the October term of the cir-
cuit court. On the date of the contract Yonge served a
copy of it on Murray Carleton, president of the Tran-
sit Company and of the United Railways Company.
On August 21, 1902, Mrs. Hagan entered into a written
stipulation with the two companies who were defend-
ants in her damage suit, as follows: "The above-named
plaintiff hereby acknowledges that the above-stated
cause has been fully settled and hereby authorizes the
dismissal of said cause at the cost of the plaintiff."
The cause referred to was the action Yonge brought in
Mrs. Hagan's name to recover damages for the death
of her husband. The stipulation was filed in the circuit
court October 15, 1902. The settlement was made with-
out Yonge's consent and he had no knowledge of it until
the filing of the stipulation or a short time before. The
defendants paid Mrs. Hagan $900 in settlement of her
case and it was dismissed pursuant to the stipulation.
Afterwards Yonge brought the present suit against the
two companies to recover one-third of the sum they
had paid Mrs. Hagan, founding his action on his con-
tract and the statutory provisions for securing and en-
forcing attorneys' liens arising out of contract. The
petition stated the facts substantially as we have given
them. The answer was a general denial.

Yonge has never been paid any compensation by
his client. The evidence shows that a man named Neu-
stadt conducted a business under the name of the Cen-
tral Law Bureau; that he advertised under that name
as an adjuster of claims and also solicited divorce suits.
Yonge sometimes acted as his attorney under an agree-
ment for a division of the fees. Mrs. Hagan had in-
trusted her claim against the two companies for the
death of her husband to Neustadt for settlement. Neu-

stadt called Yonge's attention to the claim and Yonge drew the contract employing him as attorney and sent it by J. W. Tucker to Mrs. Hagan to be signed and she signed it. Yonge swore he paid Tucker for this service, that no one had any interest in the contract but himself and he did not bind himself to share the proceeds of the contract with any one else. Defendants introduced no testimony. At the conclusion of plaintiff's testimony, which brought out the facts we have recited, the trial court found the facts as follows:

"This action is brought by one H. A. Yonge, an enrolled attorney of the court, under the act of February 25, 1901, to recover from the St. Louis Transit Company and the United Railways Company, a sum equal to one-third of the amount paid by the St. Louis Transit Company to Annie Hagan in settlement of her claim for damages on account of the death of her husband, Frank Hagan. On the first day of March, Frank Hagan was struck and almost instantly killed by one of the defendant companies' cars operated on Pine street.

"It appears from the evidence that Walter Neustadt, with the assistance of Yonge and several non-professional employees, was conducting a divorce and damage suit business in an office adjoining and opening into the room occupied by Yonge as a law office. They used the name 'Central Law Bureau' in the conduct of the business; and for several years Neustadt had inserted in the public press daily advertisements inviting divorce suits and other business, with the following fraudulent, despicable and contemptuous representations:

" 'ATTORNEYS AT LAW.

Divorces obtained promptly, quietly, moderate charges; collections made; damage cases handled; advice free.

" 'Central Law Bureau,

" '113 North Eighth Street.'

"This advertisement was framed, according to Yonge's testimony, to induce people to visit the Central Law Bureau, 'who would not otherwise come.' When persons contemplating divorce proceedings, or led to a contemplation of such proceedings by that fraud, engaged the services of the Central Law Bureau, Yonge would take two-thirds to three-fourths of the profits of the suit and leave the remainder to Neustadt. The profits of all the business of this Central Law Bureau that required a lawyer's counsel to transact, Yonge and Neustadt divided, in the language of Yonge, 'by agreeing what interest he (Neustadt) shall have in it; and what interest I have in it.' The further statement of Yonge that, 'In this particular case there was no agreement or understanding; in all cases we have an arrangement—in this case he (Neustadt) has no interest whatever,' is so impossible in view of all the facts and circumstances and conflicting statements in evidence, that I reject it entirely.

"It is admitted that the Central Law Bureau discovered Mrs. Hagan's claim, pursued her for it, and undertook to induce the St. Louis Transit Company to admit liability to her and adjust her damage. The Central Law Bureau collected the evidence from witnesses, and failing to persuade the St. Louis Transit Company to make any voluntary payment in compromise of the claim, turned it over to Yonge for suit. True, he states, that the Central Law Bureau retained no interest in the claim. In view of his unsatisfactory testimony relative to the matter and his conflicting statements, I do not regard this statement as worthy of credit. I do not believe there was any variation from Yonge and Neustadt's regular and long-established course of business in this case; and had the litigation proceeded to judgment and Yonge collected a fee for the services rendered by him and the Central Law Bureau, the latter would have shared therein. Sub-

sequent developments made it convenient for Yonge to take the position that he alone of the little Central Law Bureau Company was interested in this claim.

"When the claim of Mrs. Hagan was thus placed in Yonge's charge he drew a petition for her, praying for judgment against the St. Louis Transit Company and the United Railways Company, in the sum of five thousand dollars. He prepared another paper, introduced in evidence, purporting to give him one-third of the amount recovered, either by suit or by judgment or by compromise, in payment for services to be rendered by him. One of the employees of the Law Bureau (J. W. Tucker) took the last-mentioned paper to Mrs. Hagan, and he testified that he procured her signature to it and returned the paper to Yonge. The latter thereupon filed the petition he had drawn in the matter of' Annie Hagan v. Railroad Companies in this court. He did not see Mrs. Hagan; and she, so far as the evidence discloses, has never heard of or from him since she signed the paper presented to her by Tucker. Yonge's services ended with the filing of the petition.

"About two months later Mrs. Hagan, without the knowledge or consent of her attorney, agreed to accept nine hundred dollars in full settlement and discharge of her claim; and on the stipulation signed by her the suit filed by Yonge was dismissed and that order of dismissal has never been set aside. Yonge performed no services for Mrs. Hagan other than writing the petition, which he did previous to obtaining her signature to the paper presented to her by Tucker and subsequently filing the petition.

"When the stipulation for dismissal was filed Yonge made no request to Mrs. Hagan that she carry out any contract he claimed to have with her, nor did he take any step to have the dismissal of her damage suit set aside and further proceedings had therein to establish any lien he claimed. Mrs. Hagan is peculiarly

responsible so far as the case discloses, she has in her possession all the money she claims the defendant companies should pay her in full settlement of her claim against them, and that fund is not exempt from levy. Besides, she is doubtless as ready and willing as she is able to comply with any agreement she may have made with Yonge if he requested her to do so.

"The law encourages the amicable adjustment of disputes; and a construction of the act under which this suit is brought that will operate to prevent or restrain the client from settling her cause, without consulting the wishes of her counsel and taking the full amount of the proceeds of the settlement into her own hands, should not be favored. If a settlement in any particular case is made for the purpose of defrauding the attorney out of his fees and costs which he is entitled to receive, he had a remedy against the defendant. But it is in accordance with public policy to allow parties entire freedom in the settlement of controversies. It is not pretended that the settlement herein was in fraud of the rights of Yonge or his associates, the Central Law Bureau; but it is contended that notwithstanding the defendant companies paid Mrs. Hagan's demand in full; that she is not insolvent; and that she has not refused to make payment of any fee she may owe Yonge or the Central Law Bureau, that the defendants are still responsible to Yonge for a sum equal to one-third the amount they paid Mrs. Hagan in full settlement of her demand. Such procedure under the act in question should not and can not be sustained.

"Under the pleadings and the evidence Yonge was not entitled to a judgment against the defendant, and his motion for a new trial will be overruled."

This statute is in force in Missouri and was when Yonge contracted with Mrs. Hagan:

"Section 1. The compensation of an attorney or

counsellor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whatsoever hands they may come; and can not be effected [affected] by any settlement between the parties before or after judgment.

"Section 2.    In all suits in equity and in all actions or proposed actions at law, whether arising *ex contractu* or *ex delicto*, it shall be lawful for an attorney at law either before suit or action is brought or after suit or action is brought, to contract with his client for legal services rendered or to be rendered by him for a certain portion or percentage of the proceeds of any settlement of his client's claim or cause of action, either before the institution of suit or action, or at any stage after the institution of suit or action, and upon notice in writing by the attorney who has made such agreement with his client, served upon the defendant or defendants, or proposed defendant or defendants, that he has such an agreement with his client, stating, therein the interests he has in such claim or cause of action, then said agreement shall operate from the date of the service [s] of said notice as a lien upon the claim or cause of action, and upon the proceeds of any settlement thereof for such attorney's portion or percentage thereof, which the client may have against the defendant or defendants or proposed defendant or defendants, and can not be affected by any settlement between the parties either before suit or action is brought, or before or after judgment therein, and, any defendant or defendants, or proposed defendant or defendants, who shall, after notice as herein provided, in any manner, settle any claim, suit, cause of action, or action at law with such attorney's client, before or after litigation

instituted thereon, without first procuring the written consent of such attorney, shall be liable to such attorney for such attorney's lien as aforesaid upon the proceeds of such settlement, as per the contract existing as hereinabove provided between such attorney and his client. Approved February 25, 1901.'' [Session Acts, 1901.]

GOODE, J. (after stating the facts).—The learned circuit judge found against the plaintiff's case on the ground, that, so far as appeared, Mrs. Hagan was solvent and could compensate him for whatever services he had rendered. The statute we have quoted makes no exception to the right of an attorney to enjoy and enforce a lien in a case like this, on the ground of the solvency of his client. The action instituted by Yonge in Mrs. Hagan's name and pursuant to his contract with her, was one *ex delicto* for damages for the death of her husband. The statute says that in such an action, as well as one *ex contractu*, it is lawful for an attorney, either before the action is brought, or afterwards, to contract with his client for a certain portion of any settlement of the client's cause of action, as compensation for the services the attorney may render. It says further that the contract may be for a portion of the proceeds of a settlement made either before the institution of an action or at any time after it is instituted. Yonge's contract with Mrs. Hagan was taken before the institution of her action and was within the words of the statute. It is further provided that if notice is served on the defendant or defendants in the action by an attorney stating that he has such an agreement with his client, and stating his interest *in the claim or cause of action,* the agreement shall operate as a lien, from the date of service of notice, on the claim or cause of action and on *the proceeds of any settlement thereof,* for such attorney's portion or percentage, and that this shall be so against an actual de-

fendant or a proposed defendant. It is further provided that any settlement between the adversary parties, whether the settlement is made before the action is brought or before or after a judgment, shall not affect the attorney's lien. Further, that a defendant or proposed defendant, who in any manner shall settle any claim or cause of action with a client after service of notice by an attorney of a contract entitling him (the attorney) to a lien, shall be liable to the attorney for his lien on the proceeds of the settlement according to the contract between the attorney and the client, if the settlement is made without the written consent of the attorney. Those provisions are quite comprehensive. They indicate a purpose on the part of the Legislature to prevent a defendant, actual or potential, in an action sounding either in contract or tort, from settling with the claimant so as to cut out the claimant's attorney from a contingent compensation to which the attorney is entitled under a contract. We see no reason why Yonge was not within the protection of this statute. He had a contract with Mrs. Hagan which stated definitely what percentage of any sum collected under it, with or without suit, should be his. The defendants had notice of that contract and settled with Mrs. Hagan in disregard of it. According to the plain language of the statute, they could only make a settlement with her which would be binding on Yonge and exonerate them from liability to him, by first obtaining his written consent. The statute says, in effect, that if a settlement was made without his written consent, as it was, the companies are liable to him for his portion of the proceeds.

Two or three propositions are advanced on this appeal by way of defense to the action. The first one is that the attorney's lien provided for by the statute, does not attach to the claim or subject-matter in dispute until there is a verdict or judgment in favor of the attorney's client. That argument might be good if this

action were founded on the first section of the statute, but it is not. It is founded on the second section, wherein the attorney's lien and his right to its enforcement, is made to depend on a contract with his client and timely notice of the contract to his client's adversaries. The two sections of the statute are different in their scope and intention. This suit was well brought on the second section, as the facts fit that one and bring plaintiff's cause of action within its remedial efficacy. To say that Yonge had no lien which fastened on the claim Mrs. Hagan had employed him to prosecute, until there was "a verdict, report, decision or judgment" in her favor, would be to abrogate the second section of the statute and wipe out all those terms in it providing that an attorney's lien shall be good on the proceeds of any settlement made, not only before judgment, but before suit is brought. If the lien is not good until there is a judgment, what becomes of the clause which declares it good and binding from the date of notice to the defendant on any proceeds thereafter realized by settling the claim? The lien to be enforced in this case is no general retaining lien of an attorney or special common law lien on a judgment recovered for a client. It is a statutory lien of new creation and derives its features from the language of the creating statute.

The second proposition which the defendants invoke is that Yonge should have sought to proceed with the case of Mrs. Hagan against the Transit and United Railways Companies notwithstanding the settlement; should have interposed against the dismissal of that suit and carried it forward to a judgment for the amount of his demand. The statute in hand says in plain words that a defendant who settles with an attorney under the circumstances given, shall be liable to the attorney for that percentage of the proceeds which his contract with his client entitled him to receive. An express statutory liability of a legal char-

acter was thereby created, and as no particular or exclusive remedy was provided for its enforcement, it is enforceable by the usual common law remedy; that is, by an action at law corresponding to trespass on the case. [Sedgwick, Stat. & Const. Law (2 Ed.), p. 74 et seq. and the cases cited in the footnotes.] The construction contended for by the defendants is clearly inadmissible in view of the provision that if a settlement occurs before an action is begun on the claim, the defendant is nevertheless liable. Of course, in such an instance, the attorney can not go on with the prosecution of a suit in the name of his client, because there will be no suit pending for him to carry forward. In that contingency, unquestionably, an independent action can be instituted in his own name; and we discern nothing in the language of the statute which discriminates that contingency from one like the present, for the purpose of compelling the adoption of different procedures in the two cases. So far as the enforcement of this lien is concerned, it strikes us as resembling the statutory lien on crops, which a landlord may make effective by suing one who purchases the crops on demised premises from the tenant with knowledge of the landlord's lien. [R. S. 1899, sec. 4123.]

We are cited to decisions from outside jurisdictions; Georgia, Wisconsin and New York. The statutes construed in those cases are unlike ours and the decisions are not in point as to the remedy to be pursued in enforcing our statute; though the tone of opinion running through most of them is favorable to the plaintiff's right under his contract. [Frigg v. Chambers, 56 Ga. 274; Coleman v. Ryan, 58 Id. 182; Rodgers v. Furse, 83 Id. 115; Swift v. Register, 97 Id. 446; O'Brien v. Railway, 50 N. Y. Supp. 150; Herman v. Railway, 121 Fed. 185; Smelker v. Railway, 106 Wis. 135.] The Wisconsin statute gives a lien on the cause of action and provides that the settlement of the action after notice of the lien, shall not be valid as against

the lien. This was construed by the Supreme Court of Wisconsin to prevent a settlement of an action and to permit the attorney for the plaintiff to continue the same cause of action despite the settlement. That statute contained no expressions making the settling defendant distinctly liable to the attorney. The Georgia statute gives an attorney a lien on suits, judgments and decrees of money, and says no person shall satisfy a suit until the lien of the plaintiff's attorney for fees is satisfied. [Georgia Code, sec. 1989.] That language obviously makes the security of an attorney's lien dependent on the judgment and attaches it to the judgment. The New York statute gives an attorney a lien only from the commencement of an action, and his lien is upon the cause of action, attaching to a verdict, report, decision or final order in his client's favor. That statute is substantially like the first section of ours, but lacks the provisions of the second section. It was held in O'Brien v. Railroad, supra, in construing the New York statute, that a defendant might plead a release by the plaintiff, but the release would not affect the attorney's rights, and he could continue the prosecution of the action in his own name if he wished. Whether he could bring an independent action was not decided, but the New York Code seems to give that right. [Tracy's Code of Civil Procedure, sec. 66.] The plain language of our statute making a party who settles a claim against him in contravention of the right of an attorney to a percentage of the proceeds of the claim, liable to the attorney, whether the settlement occurs before or after suit, leaves no question in our minds that the liability is one which the attorney may enforce by an action. The statute says "shall be liable to such attorney." As said above, when a distinct liability is created in favor of a party by a statute, such party has a remedy by action in his own name to enforce the liability if there is no special remedy provided by the statute.

. It is contended that the plaintiff was bound to prove in this case that Mrs. Hagan's cause of action in the case against the Transit Company and the United Railways Company was meritorious and entitled her to a verdict; that unless this could be and was shown, he had no right to recover, as his lien depended on the validity of her case. Looking again to the text of our statute, we find language which is incompatible with this interpretation. The attorney's lien attaches to a "claim or cause of action," not to the latter alone; and remains good against a defendant who settles a "claim, cause of action, or action at law," either before or after litigation, without the attorney's written consent. In Wisconsin the statute, as we have pointed out above, attaches the attorney's lien to and makes it depend on the existence of his client's cause of action. It is, therefore, held that an adjustment of the cause of action, by accord and satisfaction, operates in extinguishment of the lien, which can not thereafter be the foundation of a separate suit by the attorney. To prevent the lien from being defeated in this manner, attorneys are allowed to proceed with their client's case, despite the adjustment; which, as to them, is a nullity. In Smelker v. Railroad, supra, it was said the statute, by a specific provision, preserved the lien in favor of an attorney in the action he had commenced; and for that reason he might prosecute such action to a final judgment for his fees, despite a settlement. Our statute contemplates a different procedure, or, at least, an additional one; for it says that if a settlement occurs without an attorney's consent, when, by virtue of a contract he has a lien on the matter in dispute, the settling defendant shall be liable to him. This appears to allow the right of settlement, so far as the pending claim or action goes, with or without the attorney's consent; but if it is exercised without his consent, a liability to him for his percentage of the proceeds arises and may be enforced against the defendant.

We think the solvency of Mrs. Hagan and her willingness to pay Yonge, of which latter fact there was no proof, is no defense to this action.

Plaintiff may have been guilty of unprofessional conduct in drumming up business and accepting employment in a cause from a concern like Neustadt's. Behavior of that character has been frowned on always by the legal profession; but, in the present instance, it does not enter as a factor into the determination of the plaintiff's right, as nothing was proven against him of a champertous nature.

The judgment is reversed and the cause remanded. All concur.