Taylor R. Young and P. H. Cullen v. Phillip Levine and Hasse Realty Company, Appellants.—31 S. W. (2d) 978.

Division One, October 14, 1930.

594

*Conrad Paeben* and *Franklin Miller* for appellants.

*Abbott, Fauntleroy, Cullen & Edwards* and *Taylor R. Young* for respondents.

FRANK, J.—Action by respondents, plaintiffs below, to recover from defendant Levine, attorney fees in the sum of $7,063.88, with interest from May 25, 1925, and to establish the amount recovered as a lien against certain real estate belonging to said defendant. The decree below awarded plaintiffs the amount claimed, with interest, declared same to be a lien on the real estate described in the petition, and ordered that defendant Hasse Realty Company pay into court for the use of plaintiffs the net amount of rents which it had collected from the tenants of said real estate, while acting as the rental agent thereof. Both defendants appealed.

The first point urged by appellant is that the court erred in refusing his demand for a jury trial to fix the reasonable value of the attorney fees sued for.

If this were a case of first impression, we would not hesitate to hold that it was a suit in equity to enforce an equitable lien. However, we are not without authority on the question. The courts of this and other jurisdictions have so held in similar cases. Fillmore v. Wells, 10 Colo. 228, was a suit by attorneys to have the amount of their fees determined, and also to have the same adjudged a lien on the realty recovered through their efforts. Section 85 of the General Statutes of Colorado, 1883, pro-

vided that "all attorneys and counselors at law shall have a lien upon any money or property in their hands, or *upon any judgment* they may have obtained belonging to any client, for any fee or balance of fees due, or any professional service rendered by them in any court of this State, which said lien may be enforced by the proper civil action." (Italics ours.)

Contention was made in that case that a suit in equity could not be maintained by an attorney for the enforcement of his lien where the employment was questioned and the amount of his claim was unliquidated. In disposing of that contention, the court, among other things, said:

"The attorney's lien, whether under the statute or at common law, is equitable in its nature. Even the decisions in this country, which confine its existence and application to the narrowest limits, always speak of it as an equitable lien, right or privilege. It is not property *in* the thing, which gives a right of action at law. It is a charge *upon* the thing, which is protected in equity. Courts of law may recognize it when the *res* is in possession of the lienor, and the owner is seeking to deprive him of such possession. But where the thing is not in possession, and some affirmative action is required by the attorney, he, like other lien claimants, must seek relief in equity. In some instances, a formal suit should be instituted; in others, an application to the court rendering the judgment, for the proper order would be sufficient.

"The main purpose of plaintiffs in this case is to utilize their lien by subjecting, through it, the rents and real estate, if need be, recovered by their exertions, to the payment of their claim for services. Since the employment by the different guardians, and the amount of compensation, are controverted matters, it becomes incidentally necessary to investigate and determine these questions. . . . But, since a court of equity is the only forum that can enforce by proper decree the lien rights, we are of opinion that this is one of the cases wherein such court may take and retain jurisdiction for all purposes. Having assumed jurisdiction to enforce the lien, it would be encouraging a multiplicity of suits, and, in this as in other respects, contrary to established procedure in equity, to say that the court of equity shall not determine the incidental, though material, legal questions involved."

Fischer-Hansen v. Railroad, 173 N. Y. l. c. 502, 66 N. E. 395, announces the same rule.

The statutes of this State gives an attorney a lien on his client's cause of action, which attaches to whatever is recovered in said action through the efforts of the attorney. Section 690, Revised Statutes 1919, provides:

"The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not re-

strained by law. From the commencement of an action or the services of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.''

The question here presented was before this court in banc in the recent case of State ex rel. Anderson v. Roehrig, 8 S. W. (2d) 998, and was there decided contrary to the contention made by appellant in this case. In that case relator, Anderson, sought to prohibit the circuit court from determining the amount of an attorney fee and adjudging the same to be a lien on the proceeds of a judgment which had been paid into court, on the ground that to permit the court, without the aid of a jury, to determine the amount of the attorney fee, would deprive him of his constitutional right to a trial of that issue by a jury. In disposing of that contention, the court cited with approval the Colorado and New York cases to which we have called attention, and held that a proceeding to enforce an attorney's lien was, in all essential respects, a proceeding in equity to enforce an equitable lien. Relator's claim that he would be wrongfully denied a jury trial was disallowed and prohibition was denied.

Appellant asks that we re-examine the rule announced in the Anderson case in event we should hold that the facts in the case at bar bring it within that rule. We are satisfied with the ruling in the Anderson case and hold in this case that no error was committed in refusing appellants' request for a jury trial. This conclusion necessarily disposes of the further contentions, (a) that trial by jury was not waived and, (b) that separate trials of the law and equity issues should have been granted.

It is next contended that the lien for $3,333.33 of the amount sued for cannot stand. This contention is based on the insistence that the petition does not bring this claim within the provisions of the attorney's lien statute.

The petition alleges, in substance, that Levine employed plaintiffs to represent him in a suit to recover the real estate on which this lien is sought and agreed to pay them one-third part of the value of said real estate in event defendant recovered the property; that through plaintiffs' efforts the suit was successfully terminated and defendant recovered the real estate from which he realized a profit of $10,000, said real estate being reasonably and fairly worth that sum over and above the encumbrance thereon.

The contention is that the statute which gives an attorney a lien upon any judgment obtained for his client does not include a decree awarding the client an interest in real estate so as to subject the

real estate recovered to a lien to secure the payment of the attorney fee.

We do not so construe the statute. Section 690, Revised Statutes 1919, heretofore quoted, gives the attorney a lien on his client's cause of action, which attaches to a judgment rendered in the client's favor. The statute makes no distinction between judgments for money or judgments for real or personal property. On the contrary it gives the attorney a lien upon *any* judgment in his client's favor. This exact question was decided in Fillmore v. Wells, 10 Colo. 228. There the statute gave attorneys a lien upon any judgment they might obtain for their client. Contention was made that the lien given by the statute did not include a decree awarding plaintiff an interest in lands, and thus subject the realty recovered to the payment of the attorney fee. Of this contention that court said:

"This statute recognizes no distinction between judgments for money or personal property, and decrees or judgments by which the ownership or possession of land is awarded to plaintiff, or his interest therein is preserved. It gives the attorney a lien upon 'any judgment' obtained by him, and belonging to his client. The language used is clear and comprehensive; it seems to cover all kinds of judgments, regardless of the subject-matter to which they relate. We do not feel at liberty to say that it was the legislative intent to exclude from the operation of the statute all judgments or decrees involving the ownership or preservation of land. Had such been the legislative purpose, different language would have been used in framing the section. This view of the provision is not only consistent with established rules of statutory construction, but, in our judgment, it also comports with an equitable administration of justice in the premises."

The fact that our statute also gives the attorney a lien on the proceeds of any verdict, report, decision or judgment in his client's favor, in whosesoever hands such proceeds may come, which cannot be affected by any settlement between the parties before or after judgment, does not affect the lien which the statute gives on the judgment. The evident purpose of the Legislature in giving a lien on the proceeds of a judgment was to afford the attorney additional protection to that given by the lien on the judgment itself.

At the trial plaintiffs affirmed and defendant denied that he agreed to pay plaintiffs one-third of the value of the real estate recovered in event they recovered it for him. In his brief filed in this court, defendant admits that under the evidence that question was one of fact to be determined by the court. In this state of the record we refer to the finding of the chancellor on that question.

Further contention is made that the lien for $3,333.33 cannot stand because under plaintiffs' own evidence one-third of the value of the property does not amount to that sum. The claim is that Young testified that the net value of the property was $9,550, while Cullen testified that he and defendant agreed that the value was $9,000. The contention is that the alleged lien being in excess of one-third of either of these amounts, it is void.

The evidence of plaintiff Young touching the net value of the property follows:

"Q. Now at the conclusion of the hearing, what was the property —in what condition did Mr. Levine receive the property and what was his profit? A. About $10,000.

"Q. Just briefly explain how that developed? A. Well, there was a $7,500 deed of trust on the property and the property was worth $17,350; it was sold for that amount about that time and Mr. Levine backed out.

"Q. Do you know the property? A. I know the property. There was some controversy about the decree, you remember, whether it took in the back part of the lot. I don't remember what we paid Mrs. Humphery to avoid litigation in that. That should be added of course to defendant's expenses.

"Q. Payments of some $300 to $500? A. I think it was $300. Maybe it was—it wasn't over $500; Mr. Levine will know that. I think it was $300.

"Q. Deducting that from the net value of the property, will stand, leave you supposedly $10,000? A. Yes, will be $10,000. . . . Mr. Levine said it was.

"Q. What was it worth? A. Seventeen thousand five hundred dollars."

Young further testified that the amount of the deed of trust was $7,000, and the defendant also testified that he believed the amount of the deed of trust was $7,000.

Defendant arrived at the conclusion that Mr. Young testified that the net value of the property was $9,550 by taking $17,350, the smallest value which Young placed on the property, and deducted therefrom the deed of trust in the sum of $7,500, and the $300 paid by defendant to settle a claim against the property, thus leaving the net value of the property $9,550.

While there is an apparent contradiction in Young's testimony as to the amount of the deed of trust on the property, it is apparent that he was testifying from memory and was not attempting to misstate the facts. He first testified that the amount of the deed of trust was $7,500. Later he testified that it was $7,000, and he is corroborated in this by the testimony of defendant who testified that he believed it was $7,000. Viewing the testimony as a whole,

it warrants the conclusion that the amount of the deed of trust was $7,000. Taking $17,350, the smallest value placed on the property by Young, and deduct the $7,000 deed of trust and the $300 paid by defendant to satisfy a claim against the property, it leaves a net value of $10,050, one-third of which exceeds the fee allowed plaintiffs.

The evidence does not justify the claim that Mr. Cullen agreed with defendant that the value of the property was $9,000. Cullen testified that on several occasions he talked with defendant about the amount of fees and told him they were entitled to one-third under their contract; that he told defendant the value of the property would be about $10,000 according to the rents that were coming in; that defendant said that the property would amount to about $9,000 net to him but he wanted to figure on it; that he told defendant he would not release the claim unless a settlement was agreed upon; that defendant said, "All right, if we put the thing through and you call it $9,000, one-third of that, $3,000, will be paid;" that later defendant said one-third was a little high; that while one-third was the contract price one-fourth ought to be sufficient.

Cullen further testified:

"Q. Now, . . . the amount of profit agreed upon between Levine, yourself and myself was $9,000? A. Nine thousand dollars. I said, 'I'm not going to spend more time talking about this thing; call your profits $9,000 and let's take it.' I thought it was more at the time."

The most that can be said of this evidence is that it tends to show an unsuccessful effort to compromise and settle the claim. An offer of compromise does not estop the party making it from thereafter setting up any legal claim or defense, or asserting any right to which the offer of compromise related. [Cook v. Continental Insurance Co., 70 Mo. 610.] The evidence warrants the conclusion that the reasonable value of the property above the incumbrance thereon was $10,000, and that plaintiffs were entitled to recover one-third thereof or $3,333.33 as compensation for their services in obtaining the property for defendant.

The court also found that plaintiffs represented defendant in other suits and business matters for which they were entitled to recover the further sum of $3,730.55, together with six per cent interest on both amounts from May 28, 1925, and rendered judgment for plaintiff in the sum of $7,770.26.

It is claimed that the amount of the judgment is excessive.

We have already pointed out that the allowance of the fee of $3,333.33 was justified by the evidence. Other fees claimed in the petition are as follows:

| | |
|---|---|
| Mente v. Levine | $1,825.00 |
| Grodsky v. Levine | 1,000.00 |
| Fees in other cases | 1,905.55 |

Defendant concedes that both the $1,825 and the $1,000 are supported by plaintiff's evidence, but contends that the court did not allow the $1,000 fee, without which allowance the judgment would be excessive. The amount of the fees alleged to be due plaintiffs total $8,063.88, but the petition prays judgment for only $7,063.88. The court did not make separate findings as to each item sued for, but made a general finding that defendant was indebted to plaintiff in the sum of $7,063.88 and rendered judgment for that amount with interest. The record does not show that the court disallowed this $1,000 fee. The petition asks for it, and the evidence supports it. We would not be justified in disallowing it on the ground that the other items sued for total the amount allowed exclusive of this $1,000. As to the item of $1,095.55 claimed for fees in other cases, defendant admits that plaintiffs' evidence supports this item to the amount of $1,026.82. Adding the Mente fee of $1,825, the Grodsky fee of $1,000 and fees in other cases amounting to $1,026.82 we have a total of $3,901.82 which defendant admits is supported by plaintiffs' evidence. Defendant's evidence tends to show a smaller amount due plaintiffs. This issue depends on the credibility of the witnesses and the weight and value to be given their testimony. We are inclined to defer to the finding of the chancellor who was in a better position to judge that question than we are from a reading of the printed record. Adding the $3,901.82 to the $3,333.33 fee in the land case, we have a total of $7,235.15. Plaintiffs recovered only $7,063.88, with interest. The judgment is, therefore, not excessive.

The court found that defendant Levine, on March 10, 1925, executed to plaintiffs an instrument of writing whereby he gave plaintiffs a lien on the real estate in question to secure the payment of all fees due plaintiffs, adjudged the amount recovered to be a lien on said real estate (describing it), and ordered that said lien be foreclosed.

Appellant contends that the judgment awarding this lien is erroneous because there was a total failure of proof as to the lien.

The petition alleged that defendant executed and delivered to plaintiff, Taylor R. Young, for the benefit of himself and his co-plaintiff, a deed of trust by which he conveyed to a trustee the property in question for the use and benefit of plaintiffs and for the purpose of securing to them all fees due them as well as future legal services. The proof offered in support of this allegation was a deed of trust executed by defendant conveying the property in question, in trust, for the purpose of securing the payment of a $10,000 obligation to plaintiffs, Young and Cullen, and defendant's brother and sister, J. D. Levine and Ida Wattenmaker. This proof was

supplemented by the verbal testimony of both plaintiffs, who testified that when they requested defendant to secure their fees by a deed of trust, he stated that he also owed his brother and sister $2,500 and suggested that they be included in the deed of trust along with plaintiffs. Defendant admitted that he executed the deed of trust as security and protection to the four parties named therein.

We are not impressed with defendant's contention that there was a total failure of proof. Although there is a discrepancy between the petition and the evidence regarding the deed of trust, it should be regarded as a variance rather than a failure of proof. A failure of proof never occurs except where the petition is unproven in its entire scope and meaning. [Smith v. Fordyce et al., Receivers, 190 Mo. 1, 83 S. W. 679.] The gist of the petition is that defendant conveyed the property in trust to secure to plaintiffs the payment of the fees due them. The proof shows that defendant did convey the property, in trust, for a twofold purpose, (1) to secure to plaintiffs the amount due them, and (2) to secure to his brother and sister an obligation which he owed them. The fact that the deed of trust, in addition to securing an obligation to plaintiffs, also secured an obligation to other parties, did not destroy its effect as evidence tending to prove that it secured plaintiffs' claim. While there was a variance between the deed of trust introduced in evidence and the one alleged in the petition, there was not a total failure of proof. Defendant did not take advantage of this variance. The deed of trust was admitted in evidence without objection. The statute provides the manner in which an objection to a variance must be made. [R. S. 1919, sec. 1272.] A variance is waived if not objected to in the manner provided in this statute. No proper objection having been made, we hold the variance was waived.

Defendant admitted that he executed the deed of trust to secure obligations to the parties therein named. The dispute was as to how the amount secured should be apportioned among the parties named in the deed of trust. Defendant testified that he owed his brother and sister $7,500 and that he intended to secure them for that amount and plaintiffs for the remaining $2,500. Defendant's brother and sister testified that he owed them $7,500, but there was no evidence that they held defendant's note or other written obligation evidencing said alleged debt. Both plaintiffs testified that defendant told them that he owed his brother and sister $2,500 and requested that they be included in the deed of trust with plaintiffs. The evidence would not warrant us in disturbing the finding of the chancellor as to this contested issue of fact.

There was a sharp conflict in the evidence as to the date when the deed of trust was executed and the circumstances attending its

execution, but as defendant admits that he executed it for the purpose of securing obligations which he owed plaintiffs and his brother and sister, the date of its execution and the attendant circumstances become wholly immaterial.

Further contention is made that the deed of trust is void because the $10,000 note which it purports to secure was never executed.

The petition pleads defendant's failure to execute the note, though often requested so to do, and asks that the lien created by the deed of trust be foreclosed.

The deed of trust recites, in substance that defendant, first party, *being justly indebted* to third parties has executed and delivered to third parties his promissory note as follows. Then follows a copy of the note.

We do not regard the failure to execute the note as fatal to the lien. This exact question was decided by the St. Louis Court of Appeals in Mandle v. Horspool, 198 Mo. App. 649, 201 S. W. 638, whereat that court said, ''We hold the deed of trust as alleged is valid even without any note or bond, although it purports to secure a note and substantially describes it, and this for the reason that the deed of trust recites that a debt in fact existed independently of the note.'' The same thing may be said in this case because the deed of trust recites that Levine, party of the first part, *being justly indebted* to the party of the third part, has executed his promissory note, etc. Aside from the specific holding in Mandle v. Horspool, supra, the general rule in this State and elsewhere is well expressed in 41 Corpus Juris 305, as follows:

''As a general rule any written contract entered into for the purpose of pledging property or some interest therein as security for a debt, which is informal or insufficient as a common law or statutory mortgage, which shows that it was the intention of the parties that it should operate as a charge on the property, it will constitute an equitable mortgage and be enforced as such in a court of equity.''

The contention that defendant's failure to execute the note invalidated the deed of trust is disallowed.

The court found that defendant Hasse Realty Company was the rental agent for the property in question, and as such agent collected and had in its possession rents accruing on said property, during the pendency of the suit. The decree adjudged that said realty company pay said rents into court for the benefit of plaintiffs and ordered that the amount thereof be paid to plaintiffs and credited as a payment on their judgment. Defendant contends that this was error.

The attorney's lien statute gave plaintiffs a lien on the judgment by which they acquired the property for defendant. The record

shows that the rents in question accrued and were collected after defendant acquired title to the property. Rents accruing after defendant acquired the property are no part of the judgment by which he acquired it. In other words, plaintiffs did not recover these rents for defendant and for that reason they are not entitled to a lien thereon, and the court erred in so holding.

It is next contended that defendant was entitled to a new trial on the ground of newly discovered evidence. The motion for new trial was filed on February 2, 1927, at which time defendant was granted ten days in which to file affidavits in support of the motion. On February 10, 1927, defendant filed the affidavit of Cleora Young. Plaintiffs thereafter filed counter affidavits. The motion for new trial does not set out the newly discovered evidence or the substance thereof. The statute provides that a motion for new trial shall be in writing and must set forth the grounds and causes therefor. [Sec. 4079, Revised Statutes 1919.] The purpose of a motion for new trial on the ground of newly discovered evidence is to state facts, which, if true, would entitle the party filing the motion to a new trial. The purpose of the affidavits is to prove the grounds alleged in the motion. In other words, the facts constituting the ground for a new trial must be stated in the motion, and where, as in this case, the motion does not state any newly discovered facts as a ground for a new trial, the defect in the motion cannot be cured by facts stated in the affidavit, because the affidavit is no part of the motion. [King v. Gilson, 206 Mo. 264, 104 S. W. 52.] Where affidavits are filed in time and with the motion and by reference in the motion are made a part of it, they could then be treated as a part of the motion. [Devine v. Wells, 254 S. W. 65, 71.] Such, however, is not the situation in this case. The insufficiency of the motion warranted the court in refusing to grant a new trial on the ground of newly-discovered evidence.

We have concluded that the judgment should be affirmed as to defendant Phillip Levine, and reversed as to defendant Hasse Realty Company. It is so ordered. All concur.