CHARLES P. NOELL v. MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.—74 S. W. (2d) 7.

Division One, July 17, 1934.

*Edward J. White, Thomas J. Cole* and *Jones, Hocker, Sullivan, Gladney & Reeder* for appellant.

*Allen, Moser & Marsalek* for respondent.

HYDE, C.—This is an action by plaintiff to collect the amount of his attorney's fee in the case of Anna L. Hobbs, administratrix of the estate of W. S. Hobbs, deceased, against the Missouri Pacific Railroad Company. Plaintiff had judgment herein for $7,000, and defendant has appealed therefrom. Plaintiff's petition stated that he was employed by Anna L. Hobbs, the widow of defendant's deceased employee to file, in St. Louis, an action for wrongful death against defendant; that his client "agreed to pay plaintiff for services rendered or to be rendered by him in that behalf, 40 per cent of the amount paid or collected in settlement of said claim;" and that "while said suit was pending in the Circuit Court of the City of St. Louis, the defendant herein settled said suit at and for the sum of $17,500."

Defendant's answer alleges many matters, which in the view we take of the case are now immaterial; but states the following defenses upon which it now principally relies, namely:

First: "The attempt of the plaintiff's petition to extend a lien granted by a Missouri statute to a cause of action arising in Arkansas, and not merely to the Missouri recovery therein, if any, is an attempt to cause the Missouri statute to operate beyond the boundaries of the State, and is a denial of due process of law, contrary to Section 30 of Article II of the Constitution of the State, as well as Amendment V and Section 1 of Amendment XIV of the Constitution of the United States."

Second: "The said Anna L. Hobbs, as administratrix of the estate of the said W. S. Hobbs, through Pace & Davis, a firm of lawyers residing and practicing in the State of Arkansas, brought her action against this defendant in the Circuit Court for the Western District of Lawrence County, a court of record of general and superior common-law jurisdiction, to recover damages for the death of the said W. S. Hobbs, and being the same alleged cause of action as previously instituted by the plaintiff herein, as attorney for the said Anna L. Hobbs as such administratrix, against this defendant in the Circuit Court of the City of St. Louis; personal service was had upon this defendant in accordance with the Arkansas law in the action so instituted in the Circuit Court for the Western District of Lawrence County; and, as in duty bound, this defendant answered in due course, pleading both to the merits and also the pendency of the prior action for the same cause in Missouri. In due course, and on March 9, 1927, there was a trial of the said cause and verdict and judgment of said Arkansas court for the plaintiff and against this defendant for the sum of $17,500. Thereupon Pace & Davis, plaintiff's attorneys in said cause, filed and presented to said Court in said cause a petition, asserting a lien upon the said recovery, under the law of Arkansas, and asking an order of said Court directing this defendant to pay said entire recovery to the clerk of the said court; and upon consid-

eration thereof said Court, on the same day, to-wit, March 9, 1927, ordered and directed this defendant to pay the said recovery into the hands of the clerk thereof. . . . The only right which plaintiff had was a lien attached to the proceeds of said judgment. . . . That by his acquiescence and silence and failure to protect or assert his alleged lien after due and timely notice thereof, the plaintiff is estopped to now recover anything against this defendant.''

Third: ''The said Pace & Davis began their action in the Chancery Court for the Western District of Lawrence County in the State of Arkansas, a court of record of general and superior equity jurisdiction, against this defendant and the said Anna L. Hobbs, as administratrix of W. S. Hobbs, in which they asserted a lien under the law of Arkansas upon the above-described judgment of recovery of the said Anna L. Hobbs as such administratrix against this defendant; and process was served upon the said Anna L. Hobbs and this defendant.

''And on March 25, 1927, this defendant, as required by law, filed its answer in said cause, and also its cross-complaint, naming the plaintiff herein as a defendant thereto, and asking that his claim of a lien upon said recovery be investigated, and the defendant be protected from the possibility of being required to pay said judgment, or any part thereof, more than once. . . . .

''The plaintiff herein then resided in the State of Missouri and could not be personally served in the State of Arkansas. A summons was issued for said plaintiff, and, with a copy of the original complaint and the cross-complaint duly certified by the clerk and under the seal of said court, was served on the plaintiff. . . . .

''The said Chancery Court entered its order directing this defendant to pay said sum so recovered against this defendant by Anna L. Hobbs, as administratrix as aforesaid, to the clerk of said court, to be dealt with as said Court might afterwards order and direct.

''And thereupon this defendant, in obedience to the order and direction of said Circuit Court of March 9, 1927, and of said Chancery Court of April 11, 1927, paid said sum to O. T. Massey, Clerk of said Circuit and Chancery Courts. . . . .

''The above-entitled cause so pending in the Chancery Court for the Western District of Lawrence County came on to be heard and finally determined by said Court, which then and there entered its judgment and decree adjudging that the contract pleaded by the plaintiff as made by him with Anna L. Hobbs, as administratrix of W. S. Hobbs, be canceled and set aside, and that the plaintiff herein was without interest in, lien upon, or right to the recovery aforesaid of said Anna L. Hobbs as such administratrix against this defendant, so paid into court by this defendant, or any part thereof. And said judgment has ever since remained, and now is, in full force

and effect, and under the provision aforesaid of the Constitution of the United States is entitled to full faith and credit." [Sec. 1, Art. IV.]

Plaintiff's reply, also, made many allegations now immaterial, but the facts stated in defendant's answer concerning the proceedings in Arkansas were shown by duly certified copies of the records of said courts and there is no controversy about them. They are, in fact, admitted in plaintiff's reply. Plaintiff alleged a conspiracy against him but there is no evidence whatever that defendant had anything to do with plaintiff's client's attempt to discharge him, her employment of Arkansas attorneys, or the commencement of a new suit in that state against defendant. We will, therefore, start with the situation as it existed when the Arkansas case was set for trial.

Plaintiff's claim, stated in his reply, is that when the damage suit was heard in Lawrence County, Arkansas, there was no actual contest but that a settlement was reached on the morning the case was set for trial. Concerning this trial, it is conceded that defendant admitted liability under the Federal Employers' Liability Act; that the jury were so instructed; and that only the amount of damages was submitted to the jury by instructions of the court. Testimony of defendant's own employees was introduced by plaintiff showing that defendant had removed a rail from its main line track, and that Hobbs was killed because defendant neglected to have a flagman on duty to flag the train which Hobbs was running as engineer. Plaintiff also offered evidence as to Hobbs' earnings. Defendant offered no evidence. It was admitted that defendant's attorney told the jury that if they returned a verdict for $17,500 he would make the recommendation to defendant to immediately pay the same without an appeal. The foreman of the jury thought that the verdict, already completely prepared, was handed to him and was signed by him without the jury leaving the box. Others thought that the jury retired, discussed the matter of damages, and reached the amount of their verdict upon the assurance of defendant's attorney that defendant would not appeal. This is substantial evidence from which the trial court might have found, and from its judgment in favor of plaintiff we must now consider it did find, that the amount of the recovery had been agreed upon between plaintiff and defendant. Plaintiff claims that such a settlement made defendant liable for the payment of his agreed fee.

Plaintiff's position as to the proceedings in the chancery court subsequent to the judgment, as stated in his reply, is that said court could not by service of summons upon him outside the State of Arkansas obtain jurisdiction over him or "the power to adjudicate the question of the validity of plaintiff's contract of employment with said Anna L. Hobbs, as administratrix as aforesaid, or the validity

of plaintiff's attorney's lien upon the said cause of action in favor of the said Anna .L. Hobbs, as such administratrix, vouchsafed to plaintiff by the laws of this State, or to otherwise pass upon or adjudicate any of plaintiff's rights in the premises, or in or to the subject matter thus sought to be brought before said chancery court; that said judgment and decree of said chancery court in said proceeding, in so far as it attempted to adjudicate the validity of plaintiff's said contract of employment or the validity of plaintiff's said attorney's lien, or to pass upon or adjudicate any of the rights of this plaintiff, were and are null and void, and that to give any force, effect, faith or credit thereto in this cause would be to deprive this plaintiff of property without due process of law, contrary to and in contravention of Section 30 of Article II of the Constitution of the State of Missouri and of Section 1 of the Fourteenth Amendment of the Constitution of the United States.''

Defendant assigns as error the refusal of its declarations of law in the .nature of demurrer to the evidence, and other declarations of law which if given would make necessary the direction of a verdict for defendant. The constitutional questions raised by the pleadings are the basis of our jurisdiction. Plaintiff has filed a motion to dismiss the appeal on the grounds of insufficient statement of facts and failure to properly state points and authorities. Since the only question here is whether, upon the evidence, plaintiff was entitled to recover, we consider defendant's brief sufficient and the motion to dismiss defendant's appeal is overruled.

Prior to the adoption of our attorney's lien statute (Laws 1901, p. 46) an attorney, who was wrongfully discharged or who was not paid for his services, ''had no remedy except the ancient one of a suit on the contract against his client.'' [Wait v. A., T. & S. F. Railroad Co., 204 Mo. 491, 103 S. W. 60; Young v. Renshaw, 102 Mo. App. 173, 76 S. W. 701, and cases cited.] Attorneys had no lien upon judgments which they recovered except that if they received their clients' money, they could, of course, ''retain their fees, just as any other bailee may retain for services rendered in the care of the subject of the bailment,'' but the defendant was not under duty to pay the judgment to the attorneys merely because he had knowledge ''that the plaintiffs are indebted to them for fees in the cause.'' [Frissell v. Haile, 18 Mo. 18.] Our Act of 1901, now Sections 11716-17, Revised Statutes 1929, was enacted, as stated in its original title, ''to prevent frauds between attorneys, clients and defendants.'' Section 1, now 11716, follows the statute of New York, and our courts have followed the prior construction thereof in the New York decisions. [Taylor v. St. Louis Transit Co., 198 Mo. 715, 97 S. W. 155; Curtis v. Metropolitan Street Ry. Co., 118 Mo. App. 341, 94 S. W. 762.] This section is as follows:

"The compensation of an attorney or counselor 'for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment."

The second section of the act (11717, R. S. 1929) provides for obtaining a lien upon the cause of action before suit is commenced thereon, by service of notice on the opposite party: Plaintiff herein did not proceed under that section, but an attorney's lien is immediately fastened upon his client's cause of action under the first section, without any notice, when his petition is filed. [Taylor v. St. Louis Transit Co., 198 Mo. 715, 97 S. W. 155; Wait v. A., T. & S. F. Ry. Co., 204 Mo. 491, 103 S. W. 60.] The cause of action of plaintiff's client in this case was one given by an Act of Congress, the Federal Employers' Liability Act (Title 45, U. S. C. A., secs. 51-59). The acts of negligence and the accident, which created this cause of action, occurred in Arkansas. Plaintiff's client lived there. The Federal act provided for the action to be brought there. It also permitted the action to be brought in Missouri. When Mrs. Hobbs contracted with plaintiff to bring her action in this State she, in effect, agreed that our attorneys' lien law should become a part of the contract, and when her suit was filed here plaintiff's lien attached to her cause of action, at least as between her, plaintiff, and defendant. That, in effect, is the decision of the St. Louis Court of Appeals in Noell v. C. & E. I. Ry. Co., 21 S. W. (2d) 937. Thereafter defendant had no right to destroy that lien by a voluntary settlement which would wipe out of existence the cause of action and leave nothing upon which plaintiff could enforce his lien. If this was done, plaintiff had the right to recover from the settling defendant the value of such lien in an independent action for deforcing his lien, corresponding to the common-law action of trespass on the case. [Taylor v. St. Louis Transit Co., 198 Mo. 715, 97 S. W. 155; O'Connor v. St. Louis Transit Co., 198 Mo. 622, 97 S. W. 150; Wait v. A., T. & S. F. Railroad Co., 204 Mo. 491, 103 S. W. 60; Mills v. Metropolitan Street Ry. Co., 282 Mo. 118, 221 S. W. 1; Yonge v. St. Louis Transit Co., 109 Mo. App. 235, 84 S. W. 184.] That is the remedy plaintiff now seeks to enforce. Other remedies may also be available to an attorney to enforce his lien such as further proceedings in the original case or an action in equity. [Wait v. A., T. & S. F. Ry. Co., supra; Young v. Levine, 326 Mo. 593, 31 S. W. (2d) 978.]

After a judgment is obtained in a suit, the cause of action is

no longer in existence but is merged in the judgment and the attorney's lien attaches to the judgment. [Taylor v. St. Louis Transit Co., supra; Young v. Levine, supra.] A defendant has no more right, after judgment than before, to settle and obtain a release of and thereby destroy the judgment and wipe out of existence the property, the *res,* upon which an attorney has his lien to secure the payment of his fee, and will be liable to the attorney in the same kind of an action if he does so. [Curtis v. Metropolitan Street Ry. Co., 118 Mo. App. 341, 94 S. W. 762; Wait v. A., T. & S. F. Ry. Co., supra.] Thus, in Laughlin v. Union Pacific Ry. Co., 196 Mo. App. 541, 196 S. W. 398, the Kansas City Court of Appeals held that a defendant must not even pay a judgment against it in a Federal court, without the consent of an attorney who had served notice under Section 11717 and without his knowledge so that he has no opportunity to protect his lien. In that case an attorney gave the railroad company, against whom he was employed to bring suit, notice of his fifty per cent contract. Before he brought a suit, his client employed other attorneys who brought a suit in a state court which was later removed to a Federal court, there tried, and judgment rendered against the railroad company, the amount of which it paid to the clerk and had judgment satisfied. The attorney first employed brought suit for and recovered half of the amount of the judgment from the railroad company. The Kansas City Court of Appeals affirmed the judgment and the case was appealed to the Supreme Court of the United States. That court also affirmed the judgment holding that the Missouri statute permitting "an independent suit to an amount equal to that for which he held the lien" did not deprive the company of any right guaranteed by the Federal Constitution. [Union Pacific Railroad Co. v. Laughlin, 247 U. S. 204, 38 Sup. Ct. 436, 62 L. Ed. 1073.] The United States Supreme Court has also held that, since the Federal Employers' Liability Act did not regulate attorney's fees, there was no reason why a state statute providing for an attorney's lien to secure attorney's fees should not be applied to cases brought under the act. [Dickinson v. Stiles, 246 U. S. 631, 38 Sup. Ct. 415, 62 L. Ed. 908.] The Laughlin case shows how far the courts have gone to protect attorney's fees but it almost marks the limits to which they can go.

We will, therefore, consider that plaintiff had a lien upon the cause of action of his client even though it arose in Arkansas and that, as between plaintiff, his client, and defendant, this lien attached to the judgment thereon when obtained in Arkansas. However, we think *it is the payment, rather than an agreement as to what is to be paid, that renders a defendant liable* to a plaintiff's attorney, because it is the payment which actually destroys the cause of action or judgment and deforces the attorney's lien. Defendant here did not, as

in the cases hereinabove cited, voluntarily pay plaintiff's client, without notice to plaintiff, and thereby destroy by its own free acts, without giving him an opportunity to protect his lien thereon, the thing upon which plaintiff had a lien. Defendant could not prevent plaintiff's client from bringing a suit against it in Arkansas. It could not prevent a judgment against it thereon, merely because there was another suit to enforce the same cause of action (which had not proceeded to judgment) pending in Missouri. It also seems evident that defendant was liable on the merits, because there was a clear case of negligence admitted by its own employees, and therefore could not prevent a judgment against it whenever and wherever it was forced to trial. Defendant was finally forced to trial in Arkansas. The only real contest it could make was over the amount of the damages. Did it not have the right to fix this amount by agreement with plaintiff's client rather than leaving that question to be settled by a jury? If so, an agreement as to that amount, without paying it, would not make defendant liable to plaintiff for his fee because such an agreement would not destroy his lien. It would only make definite and certain the amount thereof and change the form of the property to which it attached from a cause of action to a judgment.

In O'Connor v. St. Louis Transit Company, supra, it was contended that our attorney's lien statute was unconstitutional because it destroyed a defendant's right to contract. This court, in upholding the constitutionality of the act, said:

"This law does not deprive a defendant of any of his rights. When the lien is created, in dealing with the plaintiff in respect to such cause of action he must act accordingly. It does not deprive him of the right to make a settlement, but in making such settlement it simply requires that he shall take into consideration the fact that the attorney-at-law has a lien upon the cause of action, and if such lien is ignored he will be required to account to him in an action at law for the amount of such lien."

In Taylor v. St. Louis Transit Co., supra, the court considered also the question of plaintiff's rights to settle and quoted with approval from a New York case as follows:

"'It is urged by the defendant's counsel that this construction of the section is against public policy, as the law favors settlements; that the plaintiff's attorney might refuse to disclose his lien, and thereby stand in the way of settlement, and compel parties to litigate who desired to compromise their differences. This criticism overlooks the fact that the existence of the lien does not permit the plaintiff's attorney to stand in the way of a settlement. The client is still competent to decide whether he will continue the litigation, or agree with his adversary in the way.'"

In Curtis v. Metropolitan Street Railway Co., supra, the Kansas

City Court of Appeals discussed the right of a plaintiff after judgment, which had not yet become final, to settle that judgment of $1,000 for $200, and said:

" 'A cause of action is not the property of the attorney, but of the client. The attorney owns no part of it for a lien does not give a right to property, but a charge upon it. As it is merely incidental and for the purpose of security only, it would not be reasonable to hold that the Legislature intended it should be the means of blocking an honest and genuine adjustment of controversies. We think the lien is subject to the right of the client to settle in good faith without regard to the wish of the attorney.' . . .

"Had the attorneys been present at the negotiations between the parties, their client, if acting in good faith, could have settled her case for an amount that would have given her $200 in the face of their opposition and her acceptance of the settlement would have liquidated the amount of their fee. *The statute did not deprive plaintiff of this control over her own lawsuit. Its only office is to provide a security for an attorney's fee, not its liquidation."* (Italics ours.)

This case was discussed with approval by this court, in Wait v. A., T. & S. F. Railroad Co., supra, and Mills v. Metropolitan Street Ry. Co., supra. For more of the same doctrine see Whitecotton v. St. L. & H. Railroad Co., 250 Mo. 624, 157 S. W. 776. These pronouncements are sustained by authorities elsewhere. In 2 Ruling Case Law, 1081, section 171, it is said:

"The client may compromise or settle the litigation without the consent of the attorney, but where such right is exercised the lien of the attorney will not be defeated thereby, but will attach to the proceeds of the settlement. The lien which the statute fixes on the plaintiff's cause of action follows the transition, without interruption, and simply attaches to that into which the right of action is merged. If a judicial recovery is obtained, the lien attaches to that; if a compromise agreement is made, the lien attaches to that; and in each case *the attorney's interest* is such that it *cannot be defeated or satisfied by a voluntary payment to his client* without his consent."

Likewise, 6 Corpus Juris, 789, section 402, states the matter thus:

"Honest settlements by parties, made with no intention to take advantage of their attorneys, but for the simple purpose of ending the litigation, are praiseworthy and should be encouraged. A contract providing that the client shall not settle or dismiss the proceedings prior to the rendition of a judgment or a decree therein is against public policy and therefore void. . . . The existence of such lien does not confer on the attorney any right to stand in the way of a settlement which may be desired by the parties. But, while this is true, any settlement made by plaintiff without the consent of his attorney in no way affects the attorney's lien for his fees; and a

defendant who settles with a plaintiff without his attorney's knowledge does so at his own risk, although no express notice has been given to him, or to his attorney, of the existence of such lien. Upon such a settlement the claim or cause of action is extinguished, and *the lien follows and attaches to the fund produced by the settlement,* money paid in settlement or compromise being considered as 'recovered' within the lien statutes.''

Plaintiff here tacitly assents to the proposition that the parties did have a right to agree without his consent upon the amount, which should be paid to plaintiff in liquidation of her cause of action, by basing the amount of his fee, which he seeks to recover, upon the percentage of the amount they did agree upon. There was, therefore, no disregard of plaintiff's lien or his rights thereunder either because defendant made an agreement with his client fixing the amount to be paid in 'satisfaction of her claim or because defendant allowed her to obtain a judgment for that amount in the Arkansas court. Nevertheless, had defendant paid the money to the clerk of that court, we think upon the authority of Laughlin v. Union Pacific, supra, it would have been liable to plaintiff for disregarding his lien. Defendant did not do that. Defendant, although ordered by that court to pay it and although subject to execution which would compel it to pay it, did not immediately and unconditionally do so and thereby permit the destruction of the property, the judgment, upon which plaintiff had a lien. It immediately gave plaintiff notice that judgment had been obtained against it and notified him to take such steps as he saw necessary to protect his lien. Plaintiff took no steps. Defendant did not stop there. Defendant took steps in a court of equity in Arkansas to impound the judgment, to hold it until plaintiff had a reasonable time to assert his lien and have it determined. Plaintiff, although notified in a proper manner under the laws of the State of Arkansas for giving a court of equity jurisdiction to decide property rights in an action *in rem,* did not see fit to assert any claim there but without protest allowed the court to dispose of the impounded fund, which was the only thing in existence anywhere upon which he could have a lien.

Can we therefore say that defendant so disregarded plaintiff's lien as to make itself liable in an action for damages for making it impossible for plaintiff to enforce it? Did defendant participate in destroying, by its own voluntary acts, the thing upon which he had a lien? What else could defendant have done? No other course has been suggested, and we know of none, which would have preserved any greater rights to plaintiff. We have already said that defendant could not prevent plaintiff's client from hiring other lawyers, could not prevent plaintiff from bringing suit against it in Arkansas and could not prevent plaintiff from obtaining a judgment there when

it was forced to trial. Since the case was one under the Federal Employers' Liability Act defendant could not even remove it to the Federal court. Defendant could not impound the Arkansas judgment in a Missouri court or make the Arkansas lawyers and plaintiff's Arkansas client come to Missouri to litigate the matter. Defendant had to pay the judgment sometime and it did all that it could do to preserve the property upon which plaintiff had a lien and give plaintiff an opportunity to assert it, when it did pay, by impounding the judgment fund by proceedings in equity and holding it for a reasonable time for plaintiff to assert his rights.

The law does not require an impossibility. If defendant did all that it was possible for it to do it cannot be held liable to plaintiff for failing to do what was not within its power to do; bring the property, upon which plaintiff had a lien, to some place which might be more convenient for plaintiff to assert it. Defendant can only be liable to plaintiff, if it made it impossible for him to enforce his lien by destroying the property to which it attached, by its voluntary acts. Defendant did not destroy this property but preserved it where plaintiff could reach it and gave him a reasonable opportunity to reach it. It did not disregard his lien but pointed it out to the court which held the property. It cannot be held liable because it could do no more. Plaintiff's position comes down to this: That defendant must pay him $7,000 and fight out the right to deduct it, in paying the Arkansas judgment, on the theory that he was entitled to it. In other words, that the defendant was the insurer of his fee and must pay it to him and then fight his battle for it with his client in Arkansas or pay it over again to his client if it lost there. We think the shoe is on the other foot. Defendant would become liable not by failing to fight plaintiff's battle with his client but only by failing to afford plaintiff the opportunity to do so. It may be that plaintiff would have been at a disadvantage trying to establish his claim in unfriendly territory, but if he could not have established his right to a fee, himself, how could defendant have established his right to it for him? It is merely one of the incidents of contracting with parties who live in another state that the subject matter of the contract may get into the custody of a court of such state so that it will become necessary to go there to assert rights to it.

Plaintiff further says that he could disregard the proceeding in equity in Arkansas because it was in the nature of a bill of interpleader and that an action of interpleader is an action *in personam*. [Citing 33 C. J. 420, sec. 2, 450, sec. 32; see, also, p. 421, sec. 3, and p. 446, sec. 29.] It is, of course, fundamental law that one can only be bound by a proceeding *in personam* when he has been personally served within the jurisdiction. Strictly speaking, however, this proceeding was not a bill of interpleader but a proceeding to distribute

property. Its object was not to bring rival claimants into court to litigate a dispute between them but to distribute property already there. The property in this case, the Arkansas judgment, was the same as a fund already in the court's custody because the Arkansas court had the power to convert into an actual fund in its physical custody by compelling defendant by judicial process to pay it. No other court did or ever could have custody of it. Therefore, that court alone had exclusive jurisdiction to dispose of it by determining the distribution of it and adjudicating plaintiff's lien upon it. [Heidritter v. Elizabeth Oil-Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729.] In doing so, by proper notice, it could require any person anywhere to come there and assert his claim or be thereafter barred. Plaintiff, having been properly served in accordance with the laws in that state in such a proceeding, is bound by its decree in so far as it determined his lien upon the property in its custody. He, perhaps, is not bound by the part of its decree which went further and held his contract with his client to be absolutely void. It is not necessary for us in this proceeding to determine what rights he has against his client.

The judgment is reversed. *Ferguson* and *Sturgis, CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.